300 So.2d 489 (1974)
STATE of Louisiana
v.
Sherman REFUGE.
No. 54597.
Supreme Court of Louisiana.
August 30, 1974.
Rehearing Denied October 11, 1974.
*490 William L. Crull, III, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty., Gen., John M. Mamoulides, Dist. Atty., John Tooley, Asst. Dist. Atty., Ernest E. Barrow, III, Abbott J. Reeves, Special Asst. Dist. Attys., for plaintiff-appellee.
BARHAM, Justice.
Sherman Refuge was charged by bill of information with armed robbery of Aubrey T. Harris, in violation of La.R.S. 14:64. He was tried before a jury, convicted by a unanimous verdict, and sentenced to twenty years' imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. Defendant reserved and perfected four bills of exceptions, upon which he relies on appeal; he also alleges error patent on the face of the record. We affirm.
BILL OF EXCEPTIONS NO. 1
This bill was reserved when the trial court denied defendant's motions to quash the bill of information. These two motions to quash, one filed before the first prospective juror was sworn on voir dire and the other filed immediately after the defendant's charge and plea were read by the clerk to the jury, were based on the grounds that the bill of information was not signed by the District Attorney, or the Assistant District Attorney, whose name appeared at the top of the bill of information. Defendant relies on dicta in the case of State v. Durane, 153 La. 1021, 97 So. 26 (1923) to the effect that the Court in that case doubted that a verdict on a bill of information would be valid when the bill is signed by an assistant district attorney, who, instead of alleging that he in his proper person came into court and gave the court to be informed, alleges that another assistant district attorney did so, provided the defendant had moved to quash the bill and the error had not then been corrected.
Article 8 of the Louisiana Code of Criminal Procedure provides:
"Unless the context clearly indicates the contrary, official titles, such as clerk of court, coroner, district attorney, and sheriff, include assistants and deputies."
The official Comment to the article states that it was the intent of the drafters to codify the well-established general principle that assistants may perform the duties of officials under whom they serve, citing State v. Petrich, 122 La. 127, 47 So. 438 (1908). This general principle also finds expression in C.Cr.P. Art. 934(5), where "District Attorney" is defined as including an assistant district attorney. C.Cr.P. Art. 384 requires the bill of information to be made by the district attorney and signed by him. Read in context with Articles 8 and 934(5), this requirement is satisfied by the signing of the bill of information by an *491 assistant district attorney, as was done in the case before us. Therefore, this bill is without merit.
BILLS OF EXCEPTIONS NOS. 2, 3, and 4
The thrust of these three bills is defendant's contention that the alleged victim, Aubrey Harris, was not robbed of anything from his person or immediate control within the definition of La.R.S. 14:64:
"A. Armed robbery is the theft of anything of value from the person of another or which is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon."
The facts are these. On March 23, 1973, the Washington Bar in Gretna, Louisiana was the scene of an armed robbery. The money taken was the "pot" in a game of cards, to which the players had each contributed varying amounts.[1] The alleged victim, Aubrey Harris, was present at the time of the robbery, but was not at that particular time a participant in the card game. He was, however, a partner with the "gamer", or the man who was running the game, and the two of them had placed an envelope containing twenty dollars into the "pot" at the beginning of the game, the money therein belonging to both of them as partners. After the robber had taken the money, he insisted that the "gamer" come with him. At that point, Aubrey Harris intervened, addressing the robber by name and urging him to leave the man alone and take only the money. The robber then threatened Harris and warned him not to refer to him by name again. The defendant, Sherman Refuge, was subsequently identified by Harris and several other eyewitnesses, and was charged with and convicted of armed robbery of Harris.
The defendant contends that Aubrey Harris had no control or possession over anything that was taken from the room; therefore, he was not robbed under the statutory definition of robbery. In his testimony Harris stated that he had no control over the money because it belonged to the players and was under the control of the gamer, Ernest J. Stewart. Additionally, defendant argues that the only force or fear of which Harris was a victim occurred after the money had been taken by the defendant; hence, the money was not taken by means of force or intimidation of Harris.
We reject these arguments. Taking property from "the person" of another has repeatedly been broadened in scope to include taking from his presence. See State v. Cooper, 197 La. 1040, 3 So.2d 118 (1941); State v. Verret, 174 La. 1059, 142 So. 688 (1932). Most recently, in State v. McClanahan, 262 La. 138, 262 So. 2d 499 (1972), this Court affirmed its earlier holding that the felonious taking, more than the perfect title of the alleged owner, forms the essence of the jury question in cases of robbery. It is undisputed that when the game began Aubrey Harris had an interest in one-half the contents of the envelope of money contributed by his partner, Ernest Stewart, to the "pot". The extent of any of the players' interests in the money in the "pot" at the time when play was interrupted by the robbery is undetermined, but an ownership interest of an undetermined value is no less an ownership interest. Of that interest Aubrey Harris was robbed.
As to the issue of whether the taking was by means of intimidation of Harris, we adopt the holding of the Fifth Circuit Court of Appeals in Baker v. United States that "a gun used in connection *492 with and at the scene of a * * * robbery is as a matter of law a dangerous weapon and that those on the immediate scene of the robbery are placed in an objective state of danger * * *." 412 F.2d 1069, 1072 (5th Cir. 1969). The rationale relied on for that holding applies equally well in the case before us. The capacity of a gun to harm, especially in the context of the highly charged atmosphere of a robbery and the possibility that someone present might take action to prevent the robbery (as Harris did in this case to prevent the abduction of Stewart) is "a complex of circumstances in which the person on the scene is in jeopardy of harm which may occur in any one of various ways." Id. Harris was in the room when the defendant entered with a gun and demanded the money, part of which belonged to Harris. His presence at the scene, particularly in his capacity as regular partner to the gamer, is sufficient grounds for the jury to have found that the property was taken from his presence by means of intimidation.
ERROR ON THE FACE OF THE PLEADINGS AND PROCEEDINGS
The defendant's final contention is that certain remarks by the trial judge amounted to comments on the evidence prohibited by C.Cr.P. Art. 772, and that these comments constitute "patent error" which this Court may notice without a bill of exceptions. We cannot consider this objection because no bills of exceptions were perfected preserving it, as required by C.Cr.P. Art. 841. By failing to object timely and to reserve a bill of exceptions, the defendant waived his right to subsequently attack the judgment on this ground. Nor does this constitute error discoverable from an inspection of the pleadings and proceedings under the jurisprudential construction of C.Cr.P. Art. 920. See State v. Palmer, 251 La. 759, 206 So. 2d 485 (1968). That article permits consideration on appeal of "any error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." (Emphasis supplied.) The error complained of here, if error, occurred during the taking of evidence on guilt or innocence and that evidence is not a part of the pleadings and proceedings. Therefore, any alleged comments on the evidence by the trial judge are not a part of the record for the purpose of finding "patent error."
For the reasons assigned, the conviction and sentence are affirmed.
NOTES
[1] The players were playing a card game called "Kosh", in which the "pot" consisted of money contributed by each player at the beginning of the game (including the envelope containing Harris' money). After each hand was played, chips were distributed; the "pot" was to remain undivided until the end of the game, which was comprised of numerous hands. At that time the "pot" would have been distributed in proportion to the number of chips each player had in his possession then.