CHARLES WM. ROBERTS, Judge Pro Tem.
Defendant, Richard Landry, was convicted by a jury of one count of aggravated burglary, a violation of LSA-R.S. 14:60, *333 and four counts of armed robbery, violations of LSA-R.S. 14:64. Defendant was sentenced to serve 15 years at hard labor for the aggravated burglary conviction and 99 years at hard labor for each armed robbery conviction, all sentences to run concurrently and the sentences for armed robbery to be served without benefit of suspension, probation or parole. Defendant appeals his convictions in eight assignments of error. However, four assignments of error have not been briefed on appeal and are considered abandoned. State v. Dewey, 408 So.2d 1255 (La.1982), State v. Blanton, 325 So.2d 586 (La.1976) and State v. Carlisle, 315 So.2d 675 (La.1975).
FACTS
The evidence presented in connection with the motion to suppress and at the trial on the merits established that on May 5, 1988, defendant and John W. Gasaway appeared at the home of Mr. Bill Burns in Leesville, Louisiana early in the morning about 8:00 or 8:30 A.M. On this occasion, as Mr. Burns came out of his home to go to work he observed Gasaway in his garage. Gasaway told Mr. Burns that he wanted to rent from him a (mobile home) trailer to live in. In reply Mr. Burns told Gasaway that he did not rent but, Linda Keel, his daughter who ran a liquor store did the renting for him and that Gasaway would have to go there.
Nevertheless, Gasaway again approached Mr. Burns about 9:30 a.m. at the Starlight Grill and asked about renting the apartment. After being told by Mr. Burns once more that he (Burns) did not handle renting, Gasaway told Burns that he was going to Texas or Lake Charles to pick up a check and would be back. Again Burns advised Gasaway to go to the liquor store because that was where the renting was done.
Following the meeting with Mr. Burns at the cafe, defendant and Gasaway went back to the Burns’ home about 10:00 a.m. On this occasion when Mrs. Burns answered the door, they wanted to know where Mr. Burns was and told Mrs. Burns that they wanted to rent a place. Initially, Mrs. Burns advised them to go to their shopping center, but then decided to call to see if her husband was there. Defendant and Gasa-way followed Mrs. Burns into her kitchen where she used the phone. Through this call she learned that her husband was at the Starlight Cafe and she told the men to go there. After the men left, Mrs. Burns noticed they had left a bag containing six or seven rolls of duct tape and a pair of scissors on one of her tables.
Defendant and his companion returned to the Burns’ home for the third time that day about 12:00 noon or 1:00 p.m. This time the Burns’ housekeeper, Mrs. James, answered the door and was informed by the men that they had $700 and wanted to rent two trailers. Mrs. James advised them to wait there (outside the door) and she would get Mrs. Burns. However, by the time the women returned to the kitchen area, defendant and Gasaway had entered the house and walked into the kitchen.
As the women entered, Gasaway grabbed Mrs. James and defendant grabbed Mrs. Burns. Defendant pushed Mrs. Bums’ head toward the sink, put a gun to her head and told her to tell him where the safe was. He told her he wanted the safe, their jewelry and their money. During this time, the record also shows that either Mr. Burns or Mrs. Keel telephoned. Mrs. Burns told the caller she was having a heart attack, and hung up the phone.
Subsequently, defendant and Gasaway proceeded to remove numerous valuables from the Burns’ home and tied up Mrs. Burns and Mrs. James with the tape that had been left in the bag on the victim’s table. When Bill Burns arrived to check on Mrs. Burns, defendant threatened him with the gun, forced him to lie on the floor and tied him up with the duct tape. Defendant also took several hundred dollars from Bill Burns’ wallet. Shortly thereafter, Linda Keel and Deirdre Calcóte arrived to check on Mrs. Burns; and, although defendant did not tie them up, he did at gun point rob Linda Keel of $23.00 and Deirdre Calcóte of $5.00. Defendant then took Mrs. Burns’ *334 car keys, went to her car and took out her purse and took from it the Merchants and Farmers Bank & Trust Company bag containing in excess of $6,000.00. Defendant also broke into a gun cabinet and took several shotguns, rifles, pistols, a semi-automatic pistol and ammunition. Other money, including several hundred dollars in coins, jewelry and prescription drugs were also taken. After placing the valuables in a brown Toyota pickup truck which was outside (which had been seen by several people), including Linda Keel and Deirdre Calcóte, and which was clearly identifiable especially because of the vulgar statement printed in large letters on its bug shield) and after threatening to come back and kill the whole family if they called the police, defendant and Gasaway left.
Sometime around mid-afternoon on the same day, Officer Buck Massey, the lead investigator from the Leesville Police Department, received a telephone call from a service station owner in Leesville. This person gave Officer Massey a copy of a check stub from Vidor Mobile Homes in Vidor, Texas, which the detective took as evidence in this case. Subsequently, Vidor Mobile Homes and the Vidor police were contacted and asked to assist in finding John Gasaway and Gasaway’s vehicle. In the meantime, Lynn Arceneaux, a detective sergeant with the Vidor Police Department, received a tip from a reliable confidential informant regarding defendant and Gasa-way’s involvement in a Louisiana robbery. Shortly thereafter, Officer Massey and Sergeant Arceneaux met near Fields, Louisiana to exchange information. Investigator Massey gave the Vidor police a description of Gasaway’s vehicle and the license plate number, and Sergeant Arceneaux gave photographs to the Leesville police which were later used for a photographic lineup.
After Sergeant Arceneaux confirmed with Jefferson County, Texas officials that there were two outstanding arrest warrants for defendant’s parole violation, at 9:40 p.m. the Vidor police went to a trailer at 775 Rickshaw Street in Vidor where the vehicle used by Gasaway was parked. They observed Gasaway lying on the front seat of the truck. Sergeant Arceneaux ordered Gasaway from the truck, handcuffed him, and read him his Miranda rights. When Sergeant Arceneaux told Gasaway that he had information that he was involved in the Burns’ robbery in Louisiana, Gasaway voluntarily admitted his involvement, signed a consent form authorizing the police to search his vehicle, gave the police a ring stolen from the Burns’ residence, and advised Sergeant Arceneaux that other items stolen from the Burns' residence were located in the mobile home at 775 Rickshaw.
Pursuant to Gasaway’s permission to search his vehicle, the police seized: $32 in assorted bills; a large stainless steel pot which contained approximately 60 pounds of assorted coins; thirty-one .32 caliber bullets; a Voice Star Systems pager; a Mach-10 ammo clip which held sixteen rounds of ammunition; a white plastic bowl which contained a green leafy substance; four prescription pill bottles issued to the Burns which contained 34 assorted pills; one silver charm bracelet, and, one gold ring.
Meanwhile, Cody Rutherford, another Orange County deputy, found defendant hiding behind a tree in back of the trailer, and arrested him on the two outstanding Texas warrants for parole violations. A pat down search of defendant’s person performed in connection with his arrest turned up: a Merchants and Farmers Bank & Trust Company money bag containing $6,316 tied to his left leg; seven rings on his fingers; and, a .380 clip.
The Vidor police also recovered a .45 Calibre Ingram Mach-10 machine gun in the yard, approximately 25 feet in front of the pickup truck.
The Vidor police transported defendant and Gasaway to the police station. There Gasaway gave a written and recorded statement to Sergeant Arceneaux, implicating himself and defendant in the Leesville robbery. Sergeant Arceneaux then relayed that information to Officer Massey in Lees-ville, and asked that he secure Louisiana arrest warrants for defendant and Gasa-way. On the basis of this information and the positive identification of defendant and *335 Gasaway from a photographic lineup by Mr. Burns, Mrs. Burns, Linda Keel, Deirdre Calcóte, and Edna James, Officer Massey secured arrest warrants and teletyped that information to Sergeant Arceneaux in Vidor.
Sergeant Arceneaux then had his office prepare an affidavit for search and an arrest warrant to search the residence at 775 Rickshaw Street in Vidor. At 12:01 a.m. on May 6, 1988, Pat Brown, JP No. 4 for Orange County, Texas, signed the search and arrest warrant. Pursuant to that warrant, the Vidor police conducted a search of the mobile home located on the lot where Gasaway and defendant were arrested. Evidence seized in the residence were: various items of jewelry; a .88 calibre Smith & Wesson pistol; a 12 gauge shotgun; a 410 gauge Savage shotgun; a .30/30 calibre Winchester Model 94 Classic; a double barrel 12 gauge shotgun; a 12 gauge semi-automatic Savage shotgun; and, a 12 gauge pump action Western Auto shotgun.
Ultimately, on September 15, 1988, defendant was extradicted to Louisiana, and this criminal trial ensued.
ASSIGNMENTS OF ERROR NOS. 1 AND 3:
By these assignments of error, defendant contends that the trial court erred when it overruled the defendant’s motion to suppress evidence seized as a result of the execution of the search warrant and seized from the defendant’s person.
In support of these contentions, defendant argues that what the state claims as an affidavit of arrest and search warrant is not. Further, defendant contends that there is no notary signature appearing and no date. Defendant proceeds to highlight each page of the relevant document singularly and urges that the second page of S-3 is actually the search and arrest warrant. However, defendant criticizes the document by stating that there was no evidence adduced by the state that the judge who signed was a judge.
Furthermore, defendant alleges that the search was effected at a street address different from the street listed on the affidavit and search warrant. Also, he asserts that evidence introduced failed to establish that the defendant resided at either of the addresses.
Finally, in support of this assignment of error defendant argues that the evidence introduced at the motion to suppress hearing, S-3, did not comport with the requirements of the Code of Criminal Procedure, Article 162.
First, it should be noted that the document in question in the instant case which was labelled as S-3 did not originate in the State of Louisiana. Rather, it was sought, attested to and issued in the State of Texas. There is no evidence in the record to indicate that Texas law was violated. To the contrary, Sergeant Lynn Arceneaux of the Vidor Police Department testified that he followed the normal procedure and used the standard form utilized in Texas for search warrants. In addition, there was compliance with the requirements of Louisiana law as far as the search warrant is concerned.
Secondly, the document which defendant challenges consists of three (3) pages. One page contains language which incorporates the other two pages into it by reference. In particular, it states:
WHEREAS, the Affiant whose signature is affixed to the Affidavit appearing on the reverse hereof is a Peace Officer under the Laws of Texas and did heretofore this day subscribe and swear to said Affidavit before me (which said affidavit is by this reference incorporated herein for all purposes) and whereas I find that cause, for the belief he expresses therein and establishes the existence of proper grounds for the issuance of this Warrant: (Tr. p. 48)
Therefore, the document’s validity is to be measured as a single entity and not page by page as defendant attempted to do in his argument against its validity in defendant’s brief. Consequently, defendant’s argument that there is no notary signature and no date on the affidavit is contradicted by the record. Clearly the affiant subscribed and swore the affidavit before the judge at 12:01 a.m. on May 6, 1988, (Tr. p. *336 48). There is no law that requires a separate jurat on each page of one document especially when the document provides that the “affidavit is by this reference incorporated herein for all purposes.”
Likewise, defendant’s argument that no evidence was adduced by the state that the judge who signed was a judge is without substance when the record is examined. Testimony from witnesses that the person who issued the warrant, Pat Brown, was a judge came at both the hearing on the motion to suppress and at defendant’s trial on the merits. (Tr. pp. 168 and 519) Moreover, at no time in either proceeding did defendant raise the issue of whether the person who issued the search warrant was a judge. There being no evidence to the contrary, this argument is without basis.
Also, defendant’s argument that the search was made at a different address than the one listed on the affidavit in support of his contention that the evidence should have been suppressed is without merit. The evidence shows that Gum Street and Rickshaw Street run parallel to each other. The lot in question ran from one street to the other. It contained a burned down house, the house trailer and the identified brown Toyota pickup truck. The address of 775 Gum Street or 775 Rickshaw Street referred to one and the same location. At the motion to suppress hearing, Deputy Cody Rutherford of the Orange County Sheriff Department, testified as follows:
Q. Alright. On the consent or permission search and address of the residence to be searched and the location of the vehicle is listed at 775 Gum Street?
A. Yes sir.
Q. Now, in connection with the evidence receipts that Mr. Tilley asked you about that were marked MS-4, I believe, and 5, the address referred to in those evidence receipts concerning the location of the evidence that was seized was 775 Rickshaw.
A. There was a discrepancy on which road the trailer was facing. Rickshaw and Gum run like they, they run side by side and the trailer was between the, that’s where the address had been messed up.
Q. Well, where did you get the address on this, do you know who provided the address on the permission to search?
A. Sergeant Arceneaux I believe is the one that come up with the address.
Q. Okay.
A. Where that addition — where that— it’s called Little Boy Addition and the addresses are really messed up there pretty much. There’s hardly any of them correct, they don’t run in order. (Tr. p. 187-188).
Furthermore, in response to questions directed to him by the court on this matter, Deputy Rutherford further stated:
BY THE COURT: May I ask a couple of questions gentlemen?
BY BOTH COUNSEL: Yes sir.
BY THE COURT: Were you present during all of the time that the searches were conducted either pursuant to the permission to search given by Mr. Gas-away or pursuant to the warrant for search issued by Judge Brown?
A. I was present for the search on the vehicle.
BY THE COURT: Did you — were you present when the premises, the trailer itself, were you present when it was searched?
A. I was on — yes, I was on the property-
BY THE COURT: Very well. Was there ever any search made at more than one location is what I’m trying to get at? I gather you searched one vehicle and you searched one trailer and you searched the premises surrounding it, is that accurate?
A. That is accurate.
BY THE COURT: And, whether you called it 775 Gum or 775 Rickshaw you are talking about the same location, is that correct?
A. Yes. (Tr. p. 188-189)
In addition, the testimony of other witnesses substantiated this explanation of why *337 there were references to two different streets. Moreover, in cases involving an incorrect address on a warrant, the crucial question is whether the area searched is clearly the intended area for which the search warrant was secured. State v. Petta, 354 So.2d 563 (La.1978); State v. Johnson, 534 So.2d 1322 (La.App. 4 Cir.1988), writ denied, 540 So.2d 326 (La.1989).
In the instant case, the record reflected that evidence seized which defendant sought to suppress came from four different sources. One source from which evidence came was the trailer (mobile home), and another was the pickup truck which was described as being used in the crime. Still another source of evidence was obtained from defendant’s person while he was being given a pat down search incidental to his arrest. Finally, the automatic weapon was in clear view on the ground just a few feet away from the truck.
Generally, the United States Constitution, Amendment IV, protects the right of people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures. Towards this end, it further provides that no warrants shall issue, but upon probable cause, supported by oath or affirmation. Finally, the amendment notes that the warrants must particularly describe the place to be searched and the persons or things to be seized. This right of personal security was made applicable to the states by the Fourteenth Amendment. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); State v. Church, 538 So.2d 993 (La.1989). Probable cause exists when the facts and circumstances within the affi-ant’s knowledge, and of which he has reasonable trustworthy information, are sufficient to support a reasonable belief that an offense had been committed and that evidence or contraband may be found at the place to be searched. The standard for determining probable cause is a practical, nontechnical concept where the probability and not a prima facie showing of criminal activity is required. A magistrate’s determination that probable cause existed should be given great deference by a reviewing court and not the use of after-the-fact scrutiny in the form of a de novo review. Illinois v. Gate, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), and State v. Kyles, 513 So.2d 265 (La.1987), cert. denied 486 U.S. 1027, 108 S.Ct. 2005, 100 L.Ed.2d 236 (1988).
In the instant case, the record revealed that the affidavit contained the following:
AFFIDAVIT FOR SEARCH AND ARREST WARRANT
THE STATE OF TEXAS COUNTY OF ORANGE
The undersigned Affiant, being a Peace Officer under the laws of Texas and being duly sworn, on oath makes the following statements and accusations:
1. There is in Orange County, Texas a suspected place and premises described and located as follows:
Residence located at 775 Rickshaw, 14 X 80 mobile home white and brownish tan in color residence back door faces Rickshaw, the [sic] residence is inclosed [sic] by a huricane [sic] fence. To include all out buildings and a brown Toyota Texas license 156 FJ.
2. It is the belief of Affiant, and Affi-ant hereby charges and accuses that said party has in possession and is concealing at said suspected place the following described personal property to wit:
(1) 30-06 Remington
(1) 380 pistol
(1) 38 Smith & Wesson pistol
(2) double barrel shotguns
(1) 30-30 Winchester gold plated
(1) yellow gold dimond [sic] cluster ring
(1) yellow gold wedding ring w/dimonds
[sic]
(60) pounds of old silver coins
(1) uzi fully loaded semi-automatic
3. Said suspected place and premises are in charge of and controlled by each of the following persons:
Person or Persons unknown
4. It is the belief of Affiant, and Affi-ant charges and accuses, that:
*338 The above listed Property was taken in an armed robbery committed in Leesville Louisiana and committed by Richard W. Landry and John William Gasaway. Both suspects being in coustody [sic] at this time.
5. Affiant has probable cause for said belief by reason of the following facts: I HAVE REASON TO BELIEVE AND DO BELIEFE [sic] THAT THE PROPERTY AFORE LISTED IS STOLEN AND THAT IT IS AT THE ABOVE ADDRESS BECAUSE:
(1) I have personally spoke [sic] to Lieutenant Massey of the Leesville Police department and he advised me of the armed robbery which had taken place and of the suspects, Landry and Gas-away
(2) I personally received information that Richard W. Landry had been Picked out of a line-up in Leesville Louisiana, for the armed robbery.
(3) I know Richard Landry and know that he has been resideing [sic] at the residence at 775 Rickshaw and that there were warrants for his arrest for parróle [sic] violations. I personally went to the residence to check for Richard Landry. I found Landry and Gasaway at the residence Gasa-way was hideing [sic] in the truck and Landry in the back Yard. Both were arrested.
(4) I have personally took [sic] the statement of John William Gasaway which was given of his own free will and after being advised of his maranda [sic] rights and he confessed that he and Landry had committed the robbery and that the afore mentioned evidence was under a bed in the back room on the right side. He also stated that he knows that these idems [sic] were there with in [sic] the last 5 hours.
Hence, the facts were sufficient to provide the necessary probable cause for issuance of the warrant in the instant case. Likewise, evidence seized in connection with the execution of the warrant was validly obtained. Moreover, those items found on defendant’s person while giving him a pat down search incidental to a lawful arrest also were lawfully obtained. The same is true for those items seized in connection with the executed permission to search and the automatic weapon found in plain view lying on the ground just a few feet from the Toyota truck.
Therefore, the trial court did not err in denying defendant’s motion to suppress; and, these assignments of error are without merit.

ASSIGNMENT OF ERROR NO. ⅛:

Defendant contends that the state failed to prove all the elements of aggravated burglary because it failed to establish that there was an unauthorized entry into the Burns’ home. Defendant also contends there was no armed robbery of Mrs. Burns because nothing was taken from her person or within the area of her immediate control. Therefore, defendant argues the trial judge erred in failing to grant his request for post-judgment verdict of acquittal.
Mrs. James, the housekeeper, testified that when she answered the door on defendant’s and Gasaway’s third visit to the house, she asked them to wait there (outside the door), while she looked for Mrs. Burns. Mrs. James spoke to them through the screen door, which was closed. While Mrs. James was gone, defendant and Gasaway entered the house and walked into the kitchen, where they seized Mrs. James and Mrs. Burns on their return. Defendant clearly did not have permission to enter the Burns’ home and thereby effected an unauthorized entry. State v. Lozier, 375 So.2d 1333 (La.1979); State v. Tuggle, 504 So.2d 1016 (La.App. 1st Cir.1987).
As to the conviction for armed robbery of Mrs. Burns, the court in State v. Doan, 519 So.2d 174 at 176 (La.App. 4th Cir.1987), writ denied, 532 So.2d 145 (La.1988), set forth the law pertaining to things taken from the immediate control of a person as follows:
“The requirement that there be property taken ‘from the person of another’ has *339 been broadened to include taking ⅛ the presence of the person.’ The felonious taking, more than the perfect title of the alleged owner, is the essence of the jury question in robbery cases. State v. Refuge, 300 So.2d 489 (La.1974). See also State v. McClanahann, 262 La. 138, 262 So.2d 499 (1972); State v. Sanford, 446 So.2d 1381 (La.App. 1st Cir.1984).
“It is sufficient if the property is under the person’s control so that, had the victim not been subjected to violence or intimidation by the robber, he could have prevented the taking. State v. Mason, 403 So.2d 701 (La.1981). Property is considered taken from the presence of the victim even if the victim is in one room while valuables located in another room are removed. State v. Verret, 174 La. 1059, 142 So. 688 (1932). See also State v. Baldwin, 388 So.2d 664 (La.1980), cert. denied, 449 U.S. 1103, 101 S.Ct. 901, 66 L.Ed.2d 830 (1981); LaFave & Scott, Criminal Law § (1982).
“An armed robbery conviction was upheld in State v. Refuge, supra, when the ‘pot’ in a card game was stolen and the victim (present but not a participant) was a partner with the man running the game and had contributed to the pot. In State v. Jacobs, 493 So.2d 766 (La.App.2d Cir.1986), evidence that one of the robbers took the victim’s wallet from his pants on a chair in an adjoining room while the victim was awakened in his bedroom, struck on the head and stumbled onto the floor of that room was found sufficient to support an armed robbery conviction.”
Mrs. James and Mrs. Burns both testified that after Mrs. Burns showed defendant the safe and its combination he made her sit on the safe while he opened it and removed the contents. Afterward, he put her in a chair in the living-dining area and tied her up. Defendant then went through the house searching for things to take. We find that the property in Mrs. Burns’ house was under her control so that, had she not been subjected to violence and intimidation by defendant, she could have prevented the taking. The trial court did not err in denying defendant’s motion for post verdict judgment of acquittal. This assignment of error also lacks merit.

ASSIGNMENT OF ERROR NO. 8:

Defendant has listed as his final assignment of error all errors which appear patent on the face of the record of these proceedings. There are no errors patent. This assignment is without merit.
CONCLUSION
For the reasons given, defendant’s convictions and sentences are affirmed.
AFFIRMED.