MARION F. EDWARDS, Chief Judge.
12The defendant/appellant, Jamal Walker (“Walker”), appeals his conviction and sentence on a charge of armed robbery with a firearm in violation of La. R.S. 14:64 and R.S. 14:64.3. The charge was brought by bill of information filed on November 14, 2007. Walker pled not guilty at his arraignment and subsequently filed motions to suppress the evidence and the identification. After these motions were denied by the trial court, Walker was tried before a jury that found him guilty of armed robbery.[1] Walker filed a motion for new trial that was denied by the trial court.
In due course, the trial court sentenced Walker to imprisonment at hard labor for *489 twenty-five years without benefit of parole, probation, or suspension of sentence. The State filed a multiple offender bill of information alleging that Walker was a third felony offender. After a hearing on that bill of information, Walker was adjudicated a third felony offender. The trial court vacated the original sentence and resen-tenced Walker to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. Walker filed a motion for appeal that was granted by the trial court.
| oFACTS
On October 20, 2007, Bianca Davis (“Ms. Davis”) went to a birthday party at 1420 Utah Beach Drive in Bridge City. That night, between 9:00 and 9:15 p.m., Ms. Davis walked outside to call her sister. As Ms. Davis was lea'hing on a car talking to her sister, she noticed a black Chrysler Sebring convertible with dark-tinted windows drive past her. Ms. Davis then noticed the brake lights come on. She hung up the phone and, as she did so, she saw a man she later identified as Walker walk toward her.
Ms. Davis asked Walker how he was doing, and Walker said, “Fine b . . ch.” Walker immediately put a black semi-automatic gun to Ms. Davis’ head and said, “I’ll be fine when you give me your purse.”[2] Walker also demanded Ms. Davis’ cell phone. After Ms. Davis gave Walker her purse and cell phone, Walker walked back to the black Sebring and reached for the passenger side door handle to get into the car. When the car sped off, Ms. Davis screamed and ran inside the house.
Ms. Davis’ friend, Rosemary Cook, called 911 and reported the robbery because Ms. Davis was too upset to do so. Deputy Rhonda Goff of the Jefferson Parish Sheriffs Office (JPSO) came to the scene, and Ms. Davis told her what happened. After talking to Ms. Davis, Deputy Goff broadcasted a description of the car and the suspect (a black male, 5'11", medium build, with a clean-shaven head wearing blue jeans and a black-hooded shirt) over the police radio.[3] The deputy wrote down Ms. Davis’ version of events, and Ms. Davis signed the written statement. Ms. Davis testified that she had just cashed a check and had ^approximately $500 in her purse, which included hundreds, fifties, twenties, and some smaller bills.
Meanwhile, JPSO Deputy Chad Mackie was at the scene of another armed robbery at Barataría and the Westbank Expressway when he heard the broadcast. Approximately 30 to 45 minutes later, Deputy Mackie saw a car with two black males that matched the descriptions given by Ms. Davis. Deputy Mackie got in his vehicle and started following the car, which went westbound up the ramp of the Westbank Expressway at Avenue D. The deputy turned on his lights and sirens and pulled the vehicle over to the side of the expressway just before the Lafayette Street exit. Deputy Mackie exited his car and ordered the two occupants to the rear of the car, where he handcuffed them and patted them down for his safety.
Deputy Mackie briefly searched the black Sebring and, as he did so, he observed a handgun on the passenger side floorboard. He picked up the gun, removed the bullets and the magazine and *490 locked it inside his vehicle to ensure his safety.[4] After other officers arrived, Deputy Mackie conducted a more thorough search of the suspects and found $475 in cash split almost evenly on the driver (Adrian Hall) and the passenger (Walker). The cash included hundreds, fifties, twenties, and some smaller bills. Ms. Davis’ purse was never recovered.
A short while after the robbery, Ms. Davis received a phone call from Deputy Goff who told her that they had possibly caught the perpetrator of the robbery. The deputy requested that Ms. Davis meet them on the upper level of the Westbank Expressway just before the Lafayette Street exit. Ms. Davis went to that location with her mother and her sister and positively identified Walker as the perpetrator and the black Sebring as the one used in the robbery. Ms. Davis was able to identify Walker as the perpetrator on the expressway, even though he was | swearing an orange-reddish shirt and not the black-hooded shirt he wore at the time of the robbery. At trial, Ms. Davis positively Walker as the perpetrator and the gun found in the black Sebring as the same gun Walker used to rob her.
After Walker was placed in custody, someone used the credit cards and checks that had been in Ms. Davis’ purse. The State and the defense stipulated that if corporate counsel or representatives from Pizza Hut or Domino’s Pizza were called, they would testify that it is their policy not to report worthless checks to the district attorney’s office or to follow-up with worthless check cases. The State and the defense also stipulated that if Betty Hila-dang, one of the heads of the worthless check unit at the district attorney’s office were called as a witness, she would testify that there had been no affidavits filed by Pizza Hut or Domino’s Pizza in connection with the worthless checks issued on Ms. Davis’ account after the robbery.

LAW AND ANALYSIS

Walker assigns two errors for our review. He asserts that the motion to suppress the identification should have been granted and that the evidence is insufficient to support the conviction.
We recognize that, when a defendant raises issues on appeal as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for that is because, when the entirety of the- evidence, including evidence that was erroneously admitted, is insufficient to support the conviction, the accused must be discharged as to that crime, and any issues regarding trial errors become moot.[5] However, in this instance, the issue of identification is the main thrust of Walker’s argument regarding the sufficiency of | fithe evidence. Therefore, we will combine consideration and analysis of both assignments of error in the same discussion.
To support a conviction for armed robbery, the State must prove beyond a reasonable doubt that there was a taking of anything of value from the person of another by use of force or intimidation while armed with a dangerous weapon.[6] A gun used in connection with and at the scene of *491 a robbery is as a matter of law a dangerous weapon.[7]
In the instant case, Walker does not argue that the State failed to establish any of the essential statutory elements of his conviction. Rather, Walker contends that the State failed to prove beyond a reasonable doubt his identity as the offender.
In addition to proving the statutory elements of the charged offense at trial, the State is required to prove the perpetrator’s identity.[8] When the key issue is identification, the State must negate any reasonable probability of misidentification in order to carry its burden of proof.[9] Positive identification by only one witness is sufficient to support a conviction.[10]
Walker maintained throughout the prosecution that he was mistakenly identified as the robber. In the motion to suppress the evidence, Walker argued that the “show up” identification procedure was suggestive and unreliable. He further argued that Ms. Davis was mistaken in her identification of him because she insisted on seeing the suspects’ ear before identifying him as the perpetrator, and the identification was made while he was seated in handcuffs in front of the passenger side of the car. Walker argued that the presence of the black Sebring 17made the identification unduly suggestive because, in Ms. Davis’ mind, whoever was the passenger in the car was the robber.
Walker also points out that he was not wearing the same clothing at the time he was identified as the perpetrator wore at the time of the robbery. He notes that neither the hooded shirt worn by the perpetrator, nor Ms. Davis’ purse, was found in the black Sebring.
A trial court’s decision to deny a motion to suppress is afforded great weight, and will not be set aside unless the preponderance of the evidence clearly favors suppression.[11] An appellate court is not limited to the evidence adduced at the hearing on the motion; instead, it may also consider pertinent evidence given at trial, in determining whether the ruling on a defendant’s motion to suppress is correct.[12]
A defendant challenging an identification procedure has the burden of proving the identification was suggestive and there was a substantial likelihood of misidentification as a result of the identification process.[13] An identification procedure is suggestive if, during the procedure, the witness’s attention is unduly focused on the accused.[14] Even if an identification procedure is suggestive, it is the likelihood of misidentification, not the mere existence of suggestiveness, which violates due process.[15]
*492 Fairness is the standard of review for identification procedures, and reliability is the linchpin in determining the admissibility of identification testimony.[16] Factors to consider in assessing the reliability of an identification | sinclude: (1) the witness’ opportunity to view the criminal at the time of the crime; (2) the witness’ degree of attention; (3) the accuracy of his prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation.[17]
Although “show up” or one-on-one identifications are not favored in law, circumstances may justify the use of such procedures.[18] One such exception is when the suspect is apprehended and viewed soon after the crime. Such immediate identifications increase accuracy in identification and provide for the expeditious release of innocent suspects.[19] One-on-one identifications similar to the one at issue herein have been held not to be suggestive.[20]
In the instant case, we find that, applying the Manson v. Brathwaite factors, even if the identification was considered suggestive, Walker has failed to show there was a substantial likelihood of mis-identification. The evidence shows that Ms. Davis had an opportunity to observe the perpetrator at the time of the crime and that her degree of attention was excellent. Ms. Davis testified that she saw Walker walk toward her and that she saw his face and made eye contact with him. She explained that the area was “lit up” with street lights and that the weather conditions were clear.[21] Ms. Davis testified at the suppression hearing that, when she talked to the police after the robbery, she remembered everything to the “T” about the robbery because she was aware of her surroundings. She further testified that she had good vision and that she did not wear any type of visual aid and had never been directed to wear one by a physician.
|flShortly after the robbery, Ms. Davis gave the police a physical description of the robber, his clothing, and the car used in the robbery. Ms. Davis testified at the suppression hearing that the robber was a black man, “kind of tall,” with a clean-shaven head, and he had a hood over his head but not covering his face. She explained that she was able to see his head because it was not covered all the way.
Also, Ms. Davis expressed a high level of certainty at the confrontation, and the time between the crime and the confrontation was short. Ms. Davis positively identified Walker approximately 45 minutes to one hour after the robbery, even though he was wearing an orange-reddish shirt, and not the black-hooded shirt he was wearing at the time of the robbery. She also positively identified Walker at the suppression hearing and at trial as the man who robbed her. Ms. Davis testified at tidal that she was “100 percent positive” that the man she identified at the top of the Westbank Expressway was the same man who had robbed her one hour earlier. Ms. Davis further testified at trial that “this *493 man sitting right here” (indicating Walker) was that same man.
Additionally, Deputy Goff testified at trial that Ms. Davis “immediately” and “emphatically” identified Walker when she saw him at the top of the expressway, and that Ms. Davis never wavered in her identification and never looked at the other suspect, nor said she was not sure of her identification. Ms. Davis maintained that the police did not tell her which of the two suspects she should identify and that no one forced, threatened, or coerced her into identifying Walker.
Upon review, we find that the trial judge did not err by denying the motion to suppress the identification.
In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in |10the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt.[22] In cases involving circumstantial evidence, the trial court must instruct the jury that, “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.”[23] The reviewing court is not required to determine whether another possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events. Rather, the reviewing court must determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt.[24]
At trial, the State presented evidence to show that Walker robbed Ms. Davis while armed with a gun. Ms. Davis testified that a black man exited a black Sebring convertible, held a gun to her head, and demanded her purse and cell phone. After Ms. Davis gave him those items, she saw him walk to the black Sebring and reach for the passenger side door handle. The vehicle then sped away. She gave a description of the perpetrator and the car to the police. A deputy subsequently called Ms. Davis to inform her that they might have caught the suspect. Ms. Davis proceeded to the deputy’s location, where she identified Walker as the perpetrator and the black Sebring as the car used in the robbery.
The evidence at trial showed that Ms. Davis had $500 in large bills in her purse before it was stolen, and the deputy found $475 in large bills split almost evenly between Walker and the driver. A gun was found on the passenger side floor board of the black Sebring. At trial, Ms. Davis positively identified Walker |nin court as the man who robbed her, and she identified the gun found on the floor board as the gun Walker used to commit the crime.
As previously stated, Walker only questions the identification element of the crime charges. On appeal, Walker makes the same arguments he set forth before the trial court in his motion to suppress the identification.
With respect to the “show up” identification procedure, the evidence at trial reflects that Ms. Davis went to the upper level of the Westbank Expressway after receiving a call from Deputy Goff telling her that they had possibly caught the perpetrator of the robbery. When Ms. *494 Davis, her mother, and her sister got there (approximately 45 minutes to one hour after the robbery), Ms. Davis saw three police cars with flashing lights. The police told her to pull behind the police cars and then look through the lights to see if she could identify the man who robbed her. Ms. Davis testified that she did not get a good look at the black car at that time because she was looking through the lights.
Deputy Goff testified that Ms. Davis was very vocal about wanting to see the black Sebring before she made the identification. However, Ms. Davis testified that she did not ask the police to allow her to view the vehicle before she viewed the suspect. Nevertheless, Deputy Goff insisted that Ms. Davis not see the black Sebring until after she identified Walker in order to make it a “more fair identification.” She took every precaution to block Ms. Davis’ view of the bláck car prior to the identification.
Deputy Goff explained that Ms. Davis pulled up behind several police units that were behind the black Sebring on the shoulder of the expressway. She testified that Ms. Davis might have seen a black car, but she did not think Ms. Davis got a good look at it. Walker and the driver of the black Sebring were sitting |12on the ground in handcuffs at the time of the identification. Deputy Goff put the two suspects side-by-side to make the identification fair.
Deputy Mackie testified that, during the identification procedure, the two suspects were placed behind his marked vehicle and the black Sebring was in front of his vehicle. However, Ms. Davis testified that the two suspects were leaning against the guard rails and were adjacent to the vehicle. According to Deputy Goff, the two suspects were similar-looking black males with the same height and build, and both had bald heads. Nevertheless, Ms. Davis identified one of the men, Walker, as the man who robbed her. Deputy Goff allowed Ms. Davis to see the black car after she identified Walker, and Ms. Davis positively identified the car as the one used in the robbery. Deputy Goff testified that Ms. Davis was “100 percent sure of the car” at the crime scene and on the expressway because her friend had a silver Sebring convertible that looked just like it.
With respect to the convertible top of the black Sebring, Ms. Davis testified that it was up at the time of the robbery and down at the time of the identification. Deputy Goff explained that Ms. Davis had told her the top was up at the time of the robbery and down at the time of the identification. Ms. Davis asserted that, although she previously testified that the top was up on the expressway, she misinterpreted the lawyer’s question.
Ultimately, the State presented evidence that showed Walker robbed the victim while armed with a gun. Defense counsel cross-examined the State’s witnesses in an attempt to show that the victim was mistaken in her identification of Walker as the perpetrator. Through that cross-examination, the jury was made aware of the issues Walker has raised on appeal, including the issues regarding the victim’s credibility and the identification procedure. Nevertheless, the jury | ^obviously believed the victim’s testimony that Walker was the man who robbed her.
The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness.[25] Where there is conflicting testimony about factual matters, the resolution of which *495 depends on a determination of credibility of the witnesses, this is a matter of the weight of the evidence, not its sufficiency.[26] Furthermore, the credibility of witnesses will not be reweighed on appeal.[27]
In light of the foregoing, we find that a rational trier of fact could have found that the evidence was sufficient under the Jackson standard to support Walker’s armed robbery conviction, and the State negated any reasonable probability of misidentification.
This assignment is without merit.

ERRORS PATENT

We have reviewed the record for errors patent and have found the following errors.[28]
On August 7, 2009, Walker filed a “motion and incorporated memorandum to reconsider sentence” before he was sentenced on August 20, 2009, on the armed robbery conviction and before he was resentenced on November 9, 2009, as a multiple offender. It is unclear from the motion whether he was challenging the original or the enhanced sentences or both. The record does not reflect that the trial judge ruled upon the motion. However, because Walker’s sentence is mandated by La. R.S. 15:529.1(A)(3)(b), and no argument has been made to this | |4Court regarding the sentence, we find it unnecessary to remand this matter to the trial court for consideration of the motion.
For reasons set forth within this opinion, we affirm Walker’s conviction on the charge of armed robbery, his adjudication of a third felony offender, and his enhanced sentence.

AFFIRMED

. The record indicates that Walker was only tried on, and convicted of, the armed robbery charge, although the State did present evidence that Walker used a firearm in the robbery.

. Deputy Rhonda Goff testified that Ms. Davis, who was unfamiliar with guns, said that the gun Walker used was similar to the one that Deputy Goff carried, which was a semi-automatic pistol, and not a "cowboy-type gun” or revolver.

. Ms. Davis testified that Walker had a hood over his head at the time of the robbery, but it did not cover his face.

. Deputy Goff testified that the gun retrieved from the black Sebring was slightly larger than her gun and a different caliber. The gun retrieved from the black Sebring was a .40 caliber, and Deputy Goff’s gun was a ,9mm.

. State v. Taylor, 04-346, p. 4 (La.App. 5 Cir. 10/26/04), 887 So.2d 589, 592.

. La. R.S. 14:64(A); State v. Ragas, 07-3 (La.App. 5 Cir. 5/15/07), 960 So.2d 266, 271, writ denied, 07-1440 (La. 1/7/08), 973 So.2d 732, cert. denied, 555 U.S. 834, 129 S.Ct. 55, 172 L.Ed.2d 56 (2008).

. State v. Refuge, 300 So.2d 489, 491-92 (La.1974).

. State v. Ingram, 04-551 (La.App. 5 Cir. 10/26/04), 888 So.2d 923, 926.

. Id.

. State v. Williams, 02-645 (La.App. 5 Cir. 11/26/02), 833 So.2d 497, 503, writ denied, 02-3182 (La.4/25/03), 842 So.2d 398.

. State v. Raines, 00-1941 (La.App. 5 Cir. 5/30/01), 788 So.2d 635, 639-40, writ denied, 01-1906 (La.5/10/02), 815 So.2d 833.

. Id. at 640.

. State v. Hurd, 05-258 (La.App. 5 Cir. 11/29/05), 917 So.2d 567, 570, writ denied, 06-1128 (La. 11/17/06), 942 So.2d 530.

. State v. Robinson, 07-832 (La.App. 5 Cir. 4/15/08), 984 So.2d 856, 865, writ denied, 08-1086 (La. 12/19/08), 996 So.2d 1132.

. State v. Hurd, 917 So.2d at 570.

. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977).

. Manson v. Brathwaite, 97 S.Ct. at 2253.

. State v. Ayo, 08-468 (La.App. 5 Cir. 3/24/09), 7 So.3d 85, 93, writ denied, 09-1026 (La.3/5/10), 28 So.3d 1006.

. Id.

. See, State v. Scott, 06-134 (La.App. 5 Cir. 7/25/06), 939 So.2d 462, writ denied, 06-2133 (La.3/30/07), 953 So.2d 61.

. Deputy Goff described the lighting conditions at the crime scene as "fair.”

. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

. La. R.S. 15:438.

. State v. Washington, 03-1135 (La.App. 5 Cir. 1/27/04), 866 So.2d 973, 977.

. State v. Rowan, 97-21 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056.

. State v. White, 472 So.2d 130, 132 (La.App. 5 Cir.1985).

. State v. Rowan, supra.

. See, La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).