SUSAN M. CHEHARDY, Chief Judge.
| ¡¡On appeal, defendant, Jeau Anthony D. Torrence, argues that he was denied effec *873 tive assistance of counsel by trial counsel’s failure to enter a guilty plea pursuant to State v. Crosby, 338 So.2d 584 (La.1976), and thereby reserve defendant’s right to seek appellate review of the denial of his motion to suppress identification. For the reasons that follow, we affirm defendant’s convictions and sentences.

PROCEDURAL HISTORY

On December 5, 2011, the Jefferson Parish District Attorney filed a bill of information charging defendant with two counts of armed robbery, violations of La. R.S. 14:64.[1] Defendant entered a plea of not guilty at arraignment. Defendant’s pretrial motion to suppress identification was denied by the trial court on April 4, 2012.
On June 25, 2012, defendant withdrew his plea of not guilty and pled guilty as charged to both counts. During the plea colloquy, the State provided the following factual basis for defendant’s guilty plea:
On or about October 15, 2011 Jeau Anthony Torrence, Kentrell Robinson, Orlando McKnight and Justin Dadney all went to 2216 |sWilliams Boulevard which is a strip mall where ... is located the Perfections Barber Shop at approximately 9:30 p.m. [A]t that time Mr. Torrence, Robinson, McKnight exited the vehicle while Mr. Dadney remained in the vehicle as a lookout. Those three gentlemen entered the store, each armed with a weapon, either a handgun or an assault [rifle]. At that time they took money from the two victims in this case as well as an Xbox from inside the store. Mr. Dadney during the course of the robbery exited the truck that they arrived at the scene in, to warn the other three that the police were on their way. At that time, all four fled, they were apprehended shortly thereafter .and excepting Mr. McKnight who made good his escape that evening but was apprehended the following morning. Thus completing the offense of the 14:64.
Defendant was sentenced to a term of fifteen years at hard labor on each count without benefit of parole or suspension of sentence, to be served concurrently.[2] On June 20, 2014, defendant filed an application for post-conviction relief and was granted an out-of-time appeal on July 24, 2014.

DISCUSSION

On appeal, defendant argues that he was denied effective assistance of counsel by trial counsel’s failure to enter a guilty plea pursuant to State v. Crosby, 338 So.2d 584 (La.1976), and thereby reserve defendant’s right to seek appellate review of the denial of his motion to suppress identification.
A claim for ineffective assistance of counsel is most appropriately addressed through an application for post-conviction relief, filed in the trial court where a full evidentiary hearing can be conducted, rather than on direct appeal. State v. Francois, 13-616 (La.App. 5 Cir. 1/31/14), 134 So.3d 42, 58, writ denied, 14-431 (La.9/26/14), 149 So.3d 261. However, when the record contains sufficient evidence to rule on the merits of the claim and the issue is properly raised by assignment of error on appeal, it may be addressed in the interest of judicial economy. Id. In the instant case, we find the record *874 contains sufficient evidence |4to rule on the merits of defendant’s claim which was properly raised by assignment of error on appeal. Therefore, we will address it on appeal.
A guilty plea normally waives all non-jurisdictional defects in the proceedings prior to the entry of the guilty plea, and precludes review of such defects either by appeal or post-conviction relief. State v. Richardson, 09-715 (La.App. 5 Cir. 2/9/10), 33 So.3d 910, 913, writ denied, 10-526 (La.10/15/10), 45 So.3d 1109. However, in State v. Crosby, 338 So.2d 584, 588 (La.1976), the Louisiana Supreme Court determined that Louisiana courts of appeal may review assignments of error specifically reserved at the time of the guilty plea, “where the trial court accepted the guilty plea so conditioned (which the court had discretion to refuse, if proffered upon such reservation).” A defendant’s failure to reserve his right to appeal under Crosby at the time he enters his guilty plea precludes his right to appeal the trial court’s ruling on a motion to suppress. Richardson, 33 So.3d at 913.
In the instant case, the record is clear that defendant did not enter his guilty plea pursuant to Crosby and so did not reserve his right to seek appellate review of the trial court’s denial of his motion to suppress. Trial counsel’s failure to enter a Crosby plea and reserve this issue for appellate review, defendant contends, deprived him of his right to effective assistance of counsel.
A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution of 1974. Francois, 134 So.3d at 58. In order to demonstrate that a defendant has been deprived of his constitutional right to effective assistance of counsel, he must show that (1) counsel’s performance was deficient; and (2) the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). In order to succeed on a | Kclaim of ineffective assistance counsel, a defendant must satisfy both prongs of this two-part test. Id.
Under the deficiency prong, a defendant must show “that counsel made errors so serious that counsel was not functioning as the ‘counsel’ guaranteed the defendant by the Sixth Amendment.” Strickland, supra. Under the prejudice prong, a defendant must show “that counsel’s errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.” Id. This requires a defendant to “affirmatively prove prejudice.” Id., 466 U.S. at 693, 104 S.Ct. at 2067. It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Id. The defendant must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. Id., 466 U.S. at 694, 104 S.Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id.
In the instant case, to succeed on his ineffective assistance claim, defendant must show that had counsel reserved his right to appeal the suppression ruling, there is a reasonable probability that he would have prevailed on appeal. See State v. Carto, 14-736 (La.App. 5 Cir. 1/14/15), 167 So.3d 836, 841, 2015 WL 316789, at *3 (citing Smith v. Robbins, 528 U.S. 259, 285-86, 120 S.Ct. 746, 764, 145 L.Ed.2d 756 (2000)); see also s Francois, supra, at 59 (holding that “[w]hen the substantive issue that an attorney has not raised is without merit, then the claim that the attorney was *875 ineffective for failing to raise the issue also has no merit.”).
Accordingly, to address defendant’s ineffectiveness claim, we must consider the merits of the suppression issue.
On February 8, 2012, defendant filed a motion to suppress identification in which he argued that the identification procedure employed was unnecessarily and | ^impermissibly suggestive such that it was conducive to a mistaken identification. A hearing was held on this motion on April 4, 2012, wherein Officer John Sharai of the Kenner Police Department testified that approximately between 9:00 and 10:00 p.m. on October 15, 2011, he responded to a report of an armed robbery in progress at the Perfections Barber Shop on Williams Boulevard in Kenner. As he proceeded to the scene, Officer Sharai learned over the police radio that four armed black males were attempting to flee the scene in an older model red Dodge pick-up truck. Officer Sharai was three blocks away and was on the scene within seconds. As he arrived, he observed a vehicle matching the description exiting the parking lot. As Officer Sharai made a U-turn to initiate a traffic stop of the vehicle, he observed four black males inside the vehicle. He initiated the traffic stop and the vehicle eventually stopped, at which point both the driver and the front passenger exited the vehicle and fled on foot. They were soon apprehended near a CVS Pharmacy about two blocks away from the barber shop. The passenger was subsequently identified as defendant and the driver as Justin Dad-ney. Meanwhile, a third occupant of the vehicle, Kentrell Robinson, surrendered to police immediately, and the fourth, Orlando McKnight, fled and evaded apprehension until the following morning.
The three apprehended suspects were detained in a patrol unit while one of the victims, Luis Ponce, and a witness, Vincent Lauro, were transported to the scene by police.
Mr. Lauro is an employee of a bar located a few doors down from the barber shop. On the night of the robbery, he observed three armed men enter the barber shop. He explained to police that he had observed the first subject walk into the shop with a red shirt wrappéd around his face, the second subject walk into the |7shop with a black shirt wrapped around his face, and the third subject walk into the shop wearing a black shirt and tattered shorts.
Once Mr. Lauro and Mr. Ponce were at the scene of the suspects’ apprehension, the three suspects were led one by one from the patrol unit to the well-lit area underneath the overhang of the CVS Pharmacy drive-thru. The police spotlight was shone on each suspect, who stood approximately fifteen to twenty-five feet away from the witnesses during the identification.
Both Mr. Ponce and Mr. Lauro positively identified the three suspects as being involved in the robbery. Mr. Ponce made the identification “instant[ly];” he did not hesitate. As a victim who faced the armed intruders in the illuminated barber shop at the time of the robbery, Mr. Ponce identified each suspect by his role in the robbery. He identified the first suspect as the man who was armed with an AK-47, the second as the man who came in shouting that the police had been called, and the third as the man who accompanied the man armed with the AK-47. Mr. Ponce also identified the Xbox in the suspects’ possession as his, a firearm recovered from the suspects’ vehicle as one used in the robbery, and the suspects’ vehicle as the one he had seen leaving the scene.
At the conclusion of the hearing, the trial court denied the motion to suppress the identification.
*876 On review, a trial court’s decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Sam, 11-469 (La.App. 5 Cir. 2/14/12), 88 So.3d 580, 586, writ denied, 12-0631 (La.9/12/12), 98 So.3d 301. A trial court is afforded great discretion when ruling on a motion to suppress, and its ruling will not be disturbed absent an abuse of that discretion. Id.
|rA defendant challenging an identification procedure has the burden of proving that the identification was suggestive and there was a substantial likelihood of misidentification as a result of the identification process. State v. Walker, 10-536 (La.App. 5 Cir. 5/10/11), 66 So.3d 486, 491, writ denied, 11-1103 (La.11/23/11), 76 So.3d 1149. An identification procedure is suggestive if, during the procedure, the witness’ attention is unduly focused on the accused. Id. Even if an identification procedure is suggestive, it is the likelihood of misidentification, not the mere existence of suggestiveness, which violates due process. Id.
Fairness is the standard of review for identification procedures, and reliability is the linchpin in determining the admissibility of identification testimony. Walker, 66 So.3d at 492. Factors to consider in assessing the reliability of an identification include: (1) the witness’ opportunity to view the criminal at the time of the crime; (2) the witness’ degree of attention; (3) the accuracy of his prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation. Id.
Although “show up” or one-on-one identifications are not favored in law, circumstances may justify the use of such procedures. Walker, supra. One such exception is when the suspect is apprehended and viewed soon after the crime. Id. Such immediate identifications increase accuracy in identification and provide for the expeditious release of innocent suspects. Id.
With the foregoing in mind, we assess the identification procedure in the instant case. First, based upon the testimony at the suppression hearing, we find that both Mr. Lauro and Mr. Ponce had a good opportunity to view the suspects and possessed a high degree of attention at the time of the robbeiy. Mr. Lauro, who witnessed the suspects from a nearby business, was able to describe to the police what each suspect was wearing as he entered the barber shop. And Mr. |9Ponce, who was a victim of the robbery in the illuminated barber shop, identified each suspect based upon his role in the robbery. It is notable that in Mr. Ponce’s identification of the three suspects, he identified one as the lookout and the other two as initial armed intruders. This is significant because it corresponds with the fact that of the three suspects apprehended that night, two were initial armed intruders, defendant and Kentrell Robinson, and the other was the lookout, Justin Dadney. The third initial armed intruder, Orlando McKnight, was not apprehended until the next morning, and so was not included in the identification procedure. This, we find, bolsters the reliability of Mr. Ponce’s identification.
Second, the identification itself was conducted in a well-lit area of a pharmacy drive-thru, which was further augmented with the illumination of a spotlight. Third, the time between the crime and the identification procedure was minimal as the identification was conducted soon after the suspects’ apprehension, which occurred approximately two blocks away from the barber shop. And lastly, Mr. Ponce’s identifi *877 cation of the suspects was instant and without hesitation.
Upon consideration of the foregoing, we find that the identification procedure was neither suggestive nor presented a substantial likelihood of misidentification. The trial court did not abuse its discretion in denying defendant’s motion to suppress the identification. Therefore, even if defendant had entered a Crosby plea and reserved his right to seek appellate review of the suppression ruling, because we find the denial of the motion to suppress was not improper, we conclude that defendant was not deprived of effective assistance of counsel.
This assignment of error is without merit.
| wERRORS PATENT
The record was reviewed for errors patent in accordance with La.C.Cr.P. art. 920, State v. Oliveaux, 312 So.2d 337 (La.1975), and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Our review reveals one error patent requiring corrective action.
We find a discrepancy between the transcript and the Uniform Commitment Order. The transcript reflects that defendant pled guilty on June 25, 2012, while the Uniform Commitment Order reflects the adjudication date as June 26, 2012.
Where there is a conflict between the transcript and the minute entry, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). In order to ensure an accurate record, we remand this matter and order the Uniform Commitment Order be corrected to accurately reflect the adjudication date. See State v. Long, 12-184 (La.App. 5 Cir. 12/11/12), 106 So.3d 1136, 1142. We further direct the clerk of the district court to transmit the original of the corrected Uniform Commitment Order to the, officer in charge of the institution to which defendant has been sentenced, as well as to the legal department of the Louisiana Department of Public Safety and Corrections. See State ex rel. Roland v. State, 06-0244 (La.9/15/06), 937 So.2d 846; see also La.C.Cr.P. art. 892(B)(2).

DECREE

For the foregoing reasons, defendant’s convictions and sentences are affirmed. This matter is remanded for correction of the Uniform Commitment Order.

CONVICTIONS AND SENTENCES AFFIRMED; REMANDED FOR CORRECTION OF COMMITMENT.

. Also charged in this bill of information were co-defendants Justin J. Dadney, Orlando McKnight, and Kentrell M. Robinson.

. We note that the trial court did not include probation in the sentence benefits mandated to be withheld by La. R.S. 14:64(B). However, this omission does not require corrective action since, by operation of law, defendant’s sentences are deemed to contain the sentence conditions as provided for in the pertinent sentencing statute. See La. R.S. 15:301.1(A).