908 So.2d 1245 (2005)
STATE of Louisiana, Appellee
v.
Calvin James HEGGAR, Appellant.
No. 39,915-KA.
Court of Appeal of Louisiana, Second Circuit.
August 17, 2005.
*1246 Cary J. Ellis, III, Louisiana Appellate Project, for Appellant.
Robert Levy, District Attorney, Robert W. Sharp, Jr., Gina Jones, Stephen K. *1247 Hearn, Jr., Assistant District Attorneys, for Appellee.
Before GASKINS, DREW and LOLLEY, JJ.
GASKINS, J.
The defendant, Calvin James Heggar, was convicted of one count of second degree murder and was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. He now appeals. The conviction and sentence are affirmed.

FACTS
The victim, Lydell Dabney, had recently begun a relationship with Shadonna Hunter. Ms. Hunter was formerly the paramour of the defendant; Ms. Hunter and the defendant have a five-year-old daughter. On November 3, 2003, after a series of confrontations with Ms. Hunter and Mr. Dabney, Mr. Heggar moved out of the home he shared with Ms. Hunter. On the afternoon of November 8, 2003, Mr. Dabney was at his home in Ruston, Louisiana, with one of his roommates, Mr. Kenyotta Duncan, and Mr. Duncan's child.
Cellular telephone records show that at 1:51 p.m., Mr. Dabney used his cell phone to call Ms. Hunter on her cell phone. Mr. Dabney went outside and sat on the porch while he was talking to Ms. Hunter; Mr. Duncan remained inside and could not hear the conversation. During the conversation, Mr. Duncan looked out a window at the driveway and saw a black male drive up in a green Honda Accord. Mr. Heggar was known to drive a green Honda Accord, but Mr. Duncan did not know Mr. Heggar and could not identify him as the driver. The driver and Mr. Dabney began talking.
Cell phone records show that the call between Mr. Dabney and Ms. Hunter ended at 2:01 p.m. Ms. Hunter called Mr. Dabney back at 2:16 p.m. and the two talked briefly.
The admissibility of the conversations between Ms. Hunter and Mr. Dabney forms the basis of this appeal. According to Ms. Hunter, Mr. Dabney told her during their first conversation that Mr. Heggar was driving into the driveway. During the second conversation, Mr. Dabney reportedly told Ms. Hunter that he and Mr. Heggar were talking and that there was no problem. Ms. Hunter told Mr. Dabney to call her back when Mr. Heggar left. Over the objection of the defendant, the court allowed Ms. Hunter to testify to these facts.
Shortly after Mr. Dabney's second conversation with Ms. Hunter, the assailant shot Mr. Dabney eight times, killing him. Hearing the shots, Mr. Duncan hid his child under the bed and looked outside; he saw the green Honda Accord drive away. He tried to call 911 on his cell phone but could not get the phone to work; he called a friend at 2:23 p.m., but got no answer. Mr. Duncan flagged down another friend who took him to a relative's house to leave the child. A 911 call was made from that residence. Mr. Duncan and his friend then returned to the scene of the shooting to wait for police.
The murder was reported to police at 2:32 p.m. Police responding to the shooting heard Mr. Dabney's cell phone ringing; an officer answered the phone. Ms. Hunter was calling Mr. Dabney back. After talking to Ms. Hunter, the officer developed Mr. Heggar as a suspect. Police went to Mr. Heggar's house, where they found his green Honda Accord, and Mr. Heggar came to the police station voluntarily for questioning. Mr. Heggar denied involvement in the shooting and told police that he was in several other locations on the day of the murder.
*1248 Mr. Heggar produced a receipt from the Ruston County Market supermarket dated November 8, 2003, that bore a time of 2:34 p.m. Police later determined that the County Market's registers were approximately 23 minutes behind the correct time as measured by the atomic clock at the Ruston Police Department, meaning that the receipt had actually been generated at 2:57 p.m.
Despite having permission to search, police obtained search warrants for the defendant's home and car. Police found a 9mm handgun in the defendant's home under his mattress, as well as loose 9mm ammunition and a trigger lock in the defendant's car. The defendant voluntarily turned the gun over to police. Testing revealed that the defendant's gun was the one used in the homicide, and the loose ammunition in his car was the same brand as the spent cases found at the crime scene. The defendant expressed surprise when he learned that examiners had the ability to match spent bullets to a particular gun. Telephone records showed that calls were made to and from the defendant's home phone in Ruston just after 1:00 p.m. on the day of the murder. The defendant was subsequently arrested and charged with the murder of Mr. Dabney.
On March 12, 2004, the state filed a motion in limine asking the court for permission to allow Ms. Hunter to testify about the substance of her telephone conversations with Mr. Dabney just prior to his murder. The court held a hearing on the motion, and subsequently ruled that the jury could hear Ms. Hunter testify about the conversations. The defendant objected to the court's ruling. The jury convicted the defendant as charged on March 26, 2004.
On May 20, 2004, the defendant filed a motion for new trial, urging again that the trial court erred in allowing Ms. Hunter to testify under the March 8, 2004, decision of the United States Supreme Court in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), dealing with the right of confrontation. On May 24, 2004, the court heard argument on the motion for new trial and denied the motion. The court then sentenced the defendant to serve life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. The defendant now appeals.

HEARSAY AND RIGHT OF CONFRONTATION
The defendant's single assignment of error challenges the trial court's ruling on the motion in limine that allowed the state to present Ms. Hunter's testimony regarding the content of her conversations with Mr. Dabney immediately prior to his murder. The defendant urges that this testimony denied his right to confront the witnesses against him.
At the hearing on the motion in limine, the trial court found that Ms. Hunter's testimony regarding the conversations she had with the victim immediately prior to his death was admissible as present sense impressions and was not inadmissible hearsay. La. C.E. art. 801(C) provides:
Hearsay. "Hearsay" is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted.
La. C.E. art. 803(1) provides:
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
(1) Present sense impression. A statement describing or explaining an event or condition made while the declarant *1249 was perceiving the event or condition, or immediately thereafter.
Under a narrow, literal reading of La. C.E. art. 803(1), only a statement describing or explaining an event or condition made while perceiving the event or condition or immediately thereafter will be admissible as a present sense impression. State v. Brown, 618 So.2d 629 (La.App. 2d Cir.1993), writ denied, 624 So.2d 1222 (La. 1993). Ms. Hunter's testimony is hearsay under La. C.E. art. 801 because the statement presented through her testimony is that of Mr. Dabney and because the statement was offered to prove that the person in the green Honda Accord was Mr. Heggar and not some other person. However, Ms. Hunter's testimony qualifies under a "narrow and literal reading of" La. C.E. art. 803(1) as an exception to the general rule against the admissibility of hearsay. Mr. Dabney's statement to Ms. Hunter described the arrival of Mr. Heggar as it happened. Likewise, Mr. Dabney's later statement to Ms. Hunter immediately prior to the shooting that he and Heggar were talking is a description of the event as it happened and the statements also qualify under the present sense exception to the hearsay rule.[1]
Mr. Heggar's chief complaint about the admission of the testimony is rooted in the Sixth Amendment to the United States Constitution, which provides, in part:
In all criminal prosecutions, the accused shall enjoy the right to ... be confronted with the witnesses against him ...
He bases his argument on Crawford v. Washington, supra, in which the Supreme Court revised its Confrontation Clause jurisprudence with regard to the admission against a criminal defendant of testimonial statements. In that case, the defendant was charged with assault and attempted murder arising from the stabbing of a man who allegedly tried to rape the defendant's wife. The defendant claimed self-defense. The state offered as evidence against the defendant a taped statement made by the accused's wife to police during questioning to the effect that the accused did not act in self-defense. The wife was not available to testify at trial due to the State of Washington's marital privilege which bars a spouse from testifying without the other spouse's consent. The state introduced the wife's tape-recorded statements to police as evidence that the stabbing was not in self-defense, and the defendant was subsequently convicted of first degree assault while armed with a deadly weapon. The Supreme Court reversed, observing that the confrontation clause historically was concerned with testimonial statements which, by definition, include statements made by witnesses during police interrogations.
The rule established in Crawford has no application to the present case because the statements at issue were not testimonial in nature. Mr. Dabney was not speaking to police; he was speaking to a friend. He had no expectation that his statement would be of later use to accuse Mr. Heggar of a crime; he spoke informally and without coercion. His statements are thus not those of the sort that implicate the absolute requirement of Crawford that prior "testimonial" statements be subject to cross-examination prior to admission.
In the instant case there is neither a confrontation problem nor an evidentiary *1250 impediment to the use of Ms. Hunter's testimony. Given the focus of Crawford on testimonial statements, the traditional foundation of reliability for the admissibility in a criminal trial of hearsay under the exceptions is still viable so long as the declaration is not a testimonial statement. There are many indicia in this case that Ms. Hunter's testimony about Mr. Dabney's statements is reliable. Telephone records show that the two called each other just before the murder, and Mr. Duncan saw Mr. Dabney speaking on his phone at this time. Likewise, Mr. Duncan observed a car matching the description of the defendant's vehicle pull up at the time when Mr. Dabney was speaking on the phone to Ms. Hunter and observed the car leaving just after the shooting. Last, but not least, the defendant's gun was used to murder Mr. Dabney and was found under the defendant's mattress in the defendant's home shortly after the murder.[2]

CONCLUSION
For the reasons stated above, the conviction and sentence of the defendant, Calvin James Heggar, are affirmed.
AFFIRMED.
NOTES
[1] This court has previously held that statements made during telephone conversations contemporaneously describing events as they happen are admissible under the present sense impression exception to the hearsay rule. See State v. Brown, supra; State v. Huff, 27, 212 (La.App. 2d Cir.8/23/95), 660 So.2d 529, writ denied, 96-0212 (La.5/1/97), 693 So.2d 754.
[2] The state urges in brief that the defendant essentially forfeited his right under Crawford to cross-examine Mr. Dabney because he shot and killed Mr. Dabney, effectively and permanently making him unavailable. That is factually accurate but it is unnecessary to decide whether the defendant forfeited his confrontation rights in this manner because the holding in Crawford strongly suggests that the Confrontation Clause has little if any application to non-testimonial statements.