ROBERT M. MURPHY, Judge.
12Pefendant, Derrick Francois, appeals his convictions and sentences for one count of second degree murder, in violation of La. R.S. 14:30.1, and one count of intimidation of a witness, in violation of La. R.S. 14:129.1. The trial court sentenced Defendant to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence on count one, and to 20 years at hard labor on count two, to be served concurrently with the sentence on count one. For the reasons that follow, we affirm Defendant’s convictions and sentences and remand the matter to the trial court for correction of an error patent as noted herein.
FACTS AND PROCEDURAL HISTORY
On August 18, 2011, a Jefferson Parish Grand Jury returned an indictment, charging Defendant with one count of second degree murder, for the murder of Chan-drick Harris on August 28, 2011, in violation of La. R.S. 14:30.1, and with one count of intimidation of a witness in violation of La. R.S. 14:129.1. After pleading not guilty, Defendant filed several pre-trial motions, including a July 15, |s2011 motion to suppress identification and a January 7, 2013 motion in limine, which sought to exclude as inadmissible hearsay the testimony of Carolyn Geary. The trial court denied both motions on December 15, 2011 and March 18, 2013, respectively. The matter first proceeded to trial on January 7, 2013, but the trial court subsequently declared a mistrial. Trial commenced anew on March 19, 2013.
At trial, the jury was informed that Defendant’s brother, Delast Francois, was murdered in Gretna, Louisiana on April 27, 2011. Following Delast Francois’ murder, the Gretna Police Department attempted to interview Chandrick Harris, the victim in this case, regarding his knowledge of Delast Francois’ murder, but they were unable to do so. Sergeant Tris Lear testified that he attempted to speak with Harris on the scene, but he “became belligerent,” “very vocal,” “didn’t care to cooperate,” and said “a lot of vulgar and racial things toward the deceased.” During this exchange, Sergeant Lear observed that Delast Francois’ mother and father were nearby and likely overhead Harris.
After speaking with several eyewitnesses, the police determined that Harris and his friend, Makale Thompson, were visiting the residence where Delast Francois’ body was found. During their visit, Delast Francois stopped by the residence, at which point, Delast and Thompson engaged in a verbal altercation which turned physical. After Harris broke up the fight, Thompson left the scene but returned minutes later with a rifle and gunned down Delast Francois. Delast Francois died as a result of his injuries.[1]
On the following night of April 28, 2011, Lorraine Harris, Harris’ mother, was on the phone at her home with her friend Carolyn Geary. While speaking with Ms. Harris, Ms. Geary heard loud knocking through the phone. Ms. Harris told Ms. Geary: “Somebody is knocking at the door.” Ms. Harris asked Ms. Geary to *47 14remain on the phone and she relayed to Ms. Geary what was occurring and what was being said. When Ms. Harris opened the door, she recognized the visitor, whom she had seen “many times” before, as Derrick Francois, Defendant. He asked her if “Smurf’[2] was sleeping. After checking on her son and determining that he was awake, Ms. Harris invited Defendant in. He entered, prompting Ms. Harris to say, “You have my condolences for Delast.” Defendant thanked her and proceeded into Harris’ bedroom where he spoke with him.
Ms. Geary testified that she could hear what Ms. Harris was saying, and could hear the other person’s voice, but could not discern what the other person was saying. Ms. Harris told Ms. Geary that the visitor asked to speak to “Smurf.” Ms. Geary asked who the visitor was and Ms. Harris explained that it was the brother of the boy who had been killed the day before. Ms. Harris sat on the sofa from where she could see Defendant standing in her son’s room talking to her son as he was lying on his bed.
Ms. Harris observed Defendant talking calmly, asking what Harris knew about his brother’s death. Then, suddenly, in a raised voice, Defendant asked Harris: “Where that n* * * *r at?” Harris replied: “I don’t know, I don’t know where he is.” Defendant asked: “Is he in Mississippi?” As soon as Harris answered “I don’t know,” Ms. Harris heard a shot. Ms. Geary testified that she heard two shots— “pop pop” — over the phone and that Ms. Harris exclaimed, “He killed Smurf.”
Defendant then walked out of the bedroom, put the gun to Ms. Harris’ head and said, “B* * *h, shut the f* *k up.” Ms. Harris dropped the phone and pleaded for her life, at which point, Defendant put the gun down and quietly walked out of the house. Ms. Harris called 911 and told the operator, “Delast’s brother came Inhere and shot [my son].” She told the operator she thought the perpetrator’s name was Darius.
Shortly thereafter, Sergeant David Heintz of the Gretna Police Department entered Ms. Harris’ apartment to find Harris lying face down on a bed with an apparent gunshot wound to the side of his head. He died as a result of this injury. After speaking with police, both Ms. Harris and Ms. Geary agreed to go to the police station that night, where they each gave a statement.
In Ms. Harris’ statement, she stated that the perpetrator was Delast’s brother. She first referred to the perpetrator as “Derrick,” and then referred to him as “Darius.” As a result, Detective James Compton conducted an investigation of the Francois family for both a Derrick and a Darius Francois. His search did not reveal anyone with the name Darius Francois, but it did reveal a Derrick Francois and a Devin Francois. As a result, the police prepared two photographic lineups to be presented to Ms. Harris, one including Derrick Francois, and the other including Devin Francois. Within hours of Harris’ murder, Ms. Harris identified Devin Francois from the first lineup as Delast’s brother, but not as the person who shot her son. From the second lineup, she immediately identified Defendant as the person who shot her son. Several days later, Ms. Harris informed the police that she misspoke when she stated that the perpetrator’s name was “Darius.” Based upon Ms. Harris’ identification of Defendant, a warrant for his arrest was issued on April 29, 2011. At trial, Ms. Harris again explained that she made a mistake when she said the name Darius to the *48 police because she was in a state of shock. She testified that she was one hundred percent certain that Defendant murdered her son.
After the warrant was issued, the police learned that Defendant had been living in Mississippi. At trial, the Stated called Tracy Binion, the corporate human resources director for Signal International, to testify regarding Defendant’s 1^employment records. Ms. Binion testified that Defendant was employed by T.M.M., a subcontractor hired by Signal to work at its facility in Pascagoula, Mississippi. Ms. Binion testified that on April 27, 2011, the day before Harris’ murder, Defendant reported to work at 6:18 a.m. and clocked out at 4:07 p.m., which was roughly one hour earlier than his normal clock out time at 5:00 p.m. Defendant did not report back to work on April 28, 29, 30, or May 1, 2011. Ms. Binion testified that Defendant did return to work on May 2, 2011, but that he clocked out at 10:32 a.m., and never returned to work thereafter. Defendant turned himself in to the police on May 9, 2011.
The State offered Dr. Nirnala Induiu as an expert in the field of clinical psychiatry at trial. Dr. Induiu treated Ms. Harris from 2007 until February 2012 for major depressive disorder related to the death of her father. Dr. Induiu testified that, during her treatment of Ms. Harris, she had never observed any indications that Ms. Harris abused alcohol or drugs. Dr. In-duiu met with Ms. Harris after her son’s murder, but she did not observe any indications that Ms. Harris was intoxicated or on any other drug at the time her son was murdered.
On March 21, 2013, the jury returned a verdict of guilty as charged on both counts. On April 5, 2013, Defendant filed a “Motion for New Trial and for Post-Verdict Judgment of Acquittal,”[3] which the trial court denied that same day. The defense waived sentencing delays, and the trial court sentenced Defendant to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence on the count of second degree murder. On the count of witness intimidation, the trial court sentenced Defendant to 20 years at hard labor, to be served concurrently with the sentence on count one. On that same day, the defense 17filed a motion to reconsider sentence, which the trial court denied that day.[4] Defendant now appeals.
ASSIGNMENTS OF ERROR
On appeal, Defendant raises the following assignments of error:
1. The trial court erred in denying Defendant’s motion to suppress identification
2. The trial court erred in denying Defendant’s motion in limine seeking to exclude as inadmissible hearsay the testimony of Carolyn Geary
3. The trial court erred in denying Defendant’s motion for new trial
4. The verdict is contrary to the law and evidence
5. The trial court erred in denying Defendant’s motion for post-verdict judgment of acquittal
6. Defendant’s sentence is legally excessive
*49 7. Defendant was denied effective assistance of counsel at sentencing
8. The trial court erred in denying Defendant’s motion to reconsider sentence
9. The trial court erred in qualifying Dr. Nirnala Induiu as an expert in clinical psychiatry
LAW AND ANALYSIS
In his fourth and fifth assignments of error, Defendant submits claims challenging the sufficiency of the evidence. When the issues on appeal relate to both the sufficiency of evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. State v. Hearold, 608 So.2d 731, 734 (La.1992). If the appellate court determines that the evidence was insufficient, then the defendant is entitled to an acquittal, and no further inquiry as to trial errors is necessary. Id. Accordingly, we will first address Defendant’s assignments of error numbers four and five.
| ¡¡Assignment of Error Number Four
In Defendant’s fourth assignment of error, he contends that the trial court erred in denying his April 5, 2013 motion for new trial and for post-verdict judgment of acquittal because the guilty verdict of second degree murder was contrary to the law and evidence. Specifically, he contends that had the suggestive photographic identification and the inadmissible hearsay of Ms. Geary been suppressed, as he argues in his assignments of error numbers one and two, the evidence at trial would have been insufficient to convict him of second degree murder.
Defendant raised three claims in his motion for new trial and for post-judgment acquittal: (1) the trial court erred in admitting the testimony of Ms. Geary; (2) the trial court erred in qualifying Dr. Nir-nala Induiu as an expert; and (3) the verdict was contrary to the law and evidence. La.C.Cr.P. art. 851(1) provides that, on motion of the defendant, the court shall grant a hew trial whenever , the verdict is contrary to the law and the evidence. This Court has recognized that a denial of a motion for new trial based on the verdict being contrary to the law and the evidence is not subject to review on appeal. State v. Bazley, 09-358 (La.App. 5 Cir. 1/11/11), 60 So.3d 7, 19, writ denied, 11-0282 (La.6/17/11), 63 So.3d 1039. The question of sufficiency of evidence, however, is properly raised in the trial court by a motion for post-verdict judgment of acquittal under La.C.Cr.P. art. 821. Id. at 18. Here, Defendant filed not only a motion for new trial, but also a motion for post-verdict judgment of acquittal challenging the sufficiency of the evidence. Both the Louisiana Supreme Court and this Court have addressed the constitutional issue of sufficiency of the evidence under such circumstances. Id. at 19; citing State v. Condley, 04-1349 (La.App. 5 Cir. 5/31/05), 904 So.2d 881, 888-89, writ denied, 05-1760 (La.2/10/06), 924 So.2d 163. Therefore, we find that this assignment of error is properly before this Court on appeal.
In reviewing the sufficiency of the evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Neal, 00-0674 (La.6/29/01), 796 So.2d 649, 657, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002). The requirement that the evidence be viewed in the light most favorable to the prosecution requires the reviewing court to defer to the actual trier of fact’s rational *50 credibility calls, evidence weighing, and inference drawing. State v. Caffrey, 08-717 (La.App. 5 Cir. 5/12/09), 15 So.3d 198, 202, writ denied, 09-1305 (La.2/5/10), 27 So.3d 297. The reviewing court is not permitted to decide whether it believes a witness or whether the conviction is contrary to the weight of the evidence. Id.
Under the Jackson standard, a review of a criminal conviction record for sufficiency of the evidence does not require the reviewing court to determine whether the evidence at the trial established guilt beyond a reasonable doubt, but whether, upon review of the whole record, any rational trier of fact could have found guilt beyond a reasonable doubt. State v. Jones, 08-20 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240. In making this determination, it is not the function of the appellate court to re-evaluate the credibility of witnesses or to re-weigh the evidence. Caffrey, supra. Rather, the resolution of conflicting testimony rests solely with the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. State v. Bailey, 04-85 (La.App. 5 Cir. 5/26/04), 875 So.2d 949, 955, writ denied,, 04-1605 (La.11/15/04), 887 So.2d 476, cert. denied 546 U.S. 981, 126 S.Ct. 554, 163 L.Ed.2d 468 (2005). Thus, in the absence of internal contradiction or irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to support a conviction. State v. Dixon, 07-915 (La.App. 5 Cir. 3/11/08), 982 So.2d 146, 153, writ denied, 08-0987 (La.1/30/09), 999 So.2d 745.
In this case, Defendant was convicted of second degree murder in violation of La. R.S. 14:30.1. Second degree murder is defined, in pertinent part, as the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1(A)(1). Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. State v. Seals, 09-1089 (La.App. 5 Cir. 12/29/11), 83 So.3d 285, 306, writ denied, 12-0293 (La.10/26/12), 99 So.3d 53, cert. denied, — U.S. -, 133 S.Ct. 2796, 186 L.Ed.2d 863 (2013) (citing La. R.S. 14:10(1)). The determination of specific intent is a question of fact. Id. at 306. Specific intent need not be proven as a fact, but may be inferred from the circumstances surrounding the offense and the conduct of the defendant. State v. Gonzalez, 07-449 (La.App. 5 Cir. 12/27/07), 975 So.2d 3, 8, writ denied, 08-0228 (La.9/19/08), 992 So.2d 949 (“The act of aiming a lethal weapon and discharging it in the direction of the victim supports a finding by the trier of fact that the defendant acted with specific intent to kill.”).
In addition to proving each statutory element of the crime charged, the State must also prove the identity of the perpetrator. State v. Williams, 08-272 (La. App. 5 Cir. 12/16/08), 3 So.3d 526, 529, unit denied, 09-0143 (La.10/16/09), 19 So.3d 470. Positive identification by only one witness is sufficient to support a conviction. Id. Where the key issue is identification, the State is required to |unegate any reasonable probability of misidentification in order to carry its burden of proof. Id.
In the instant case, the victim’s mother, Ms. Harris, an eyewitness to the murder, testified that she permitted the perpetrator into her house the night her son was killed. She explained that when she opened the door, she recognized the visitor, whom she had seen many times before, as Defendant. She offered her condolences with respect to his brother who had been killed the day before. Within *51 moments, she heard Defendant yelling at her son, followed by a gunshot. Defendant then exited her son’s room and pointed the gun at her while she then pleaded for her life. Ms. Harris testified that she was one hundred percent certain that Defendant murdered her son.
Ms. Geary, who spoke on the phone with Ms. Harris during the shooting, testified that, as the events were occurring, Ms. Harris relayed to her that Delast’s brother came into her house and shot her son. In the 911 call, Ms. Harris told the operator that Delast’s brother shot her son. Despite initially identifying the perpetrator as “Darius” Francois, she later repeatedly explained that this was a mistake, which was corroborated by the fact that Delast Francois does not have a brother named Darius. Then, when presented with photographic lineups, Ms. Harris identified two brothers of Delast Francois, immediately identifying Defendant as the one who shot her son.
Although Defendant sought to discredit Ms. Harris, arguing she was mentally-ill and her observations were not trustworthy, our review of the evidence shows that Defendant failed to offer any evidence in support of this claim. To the contrary, the evidence indicates that Ms. Harris was of clear mind the night her son was murdered. For instance, Sergeant David Heintz, Officer Brandon LeBlanc, Sergeant Lear, Detective Compton, and Detective Louis Alvarez, all of whom | ^encountered Ms. Harris at the scene on the night of her son’s murder, testified that she did not appear intoxicated. Ms. Geary also testified that Ms. Harris did not sound intoxicated while on the phone that night, and Ms. Harris herself testified that she had not consumed alcohol or any other drug that night.
The State also introduced the testimony of Dr. Induiu, the psychiatrist who treated Ms. Harris from 2007 until February 2012 for major depressive disorder. Dr. Induiu testified that the medications she prescribed for Ms. Harris, Paxil and Trazo-done, would not be expected to impair Ms. Harris’ sensory faculties, and that she did not observe any indications that Ms. Harris was experiencing any side effects from her medication before or after her son’s murder. Dr. Induiu further testified that when she met with Ms. Harris after her son’s murder, she did not observe any indication that Ms. Harris was intoxicated or using any other drug at that time.
Our review of the evidence in a light most favorable to the prosecution reveals that the evidence adduced at trial was sufficient to support the conclusion that Defendant had specific intent to kill the victim in this case. Ms. Harris unequivocally identified Defendant as the perpetrator who entered her home and shot her son in the head at close range. Since it is not this Court’s function to re-evaluate the credibility of witnesses, and since a positive identification by only one witness is sufficient to support a conviction, we find that the evidence, both direct and circumstantial, was sufficient for any rational trier of fact to have found Defendant guilty of second degree murder beyond a reasonable doubt. Therefore, we find the trial court did not abuse its discretion in denying Defendant’s motion for new trial and for post-judgment acquittal based on the sufficiency of the evidence. This assignment of error is without merit.
Although Defendant also contends on appeal that the State failed to produce evidence sufficient to support his conviction of witness intimidation, we find that he failed to provide any argument in support of this contention. Defendant has only offered one sentence in support of this claim on appeal: “As to the second count of the indictment, the State failed to *52 produce any evidence at all to satisfy the elements of Public Intimidation of a witness.” Because all specifications or assignments of error must be briefed, we consider this assignment abandoned. See State v. Sinceno, 12-118 (La.App. 5 Cir. 7/31/12), 99 So.3d 712, 720, writ denied, 12-2024 (La.1/25/13), 105 So.3d 713 (“All specifications or assignments of error must be briefed, and the appellate court may consider as abandoned any specification or assignment of error that has not been briefed.”); see also Rule 2-12.4, Uniform Rules of the Courts of Appeal. Nevertheless, pursuant to this Court’s error patent review, we have reviewed the sufficiency of the evidence relative to Defendant’s witness intimidation conviction in accordance with State v. Raymo, 419 So.2d 858 (La.1982), and find no error.

Assignment of Error Number Five

In his fifth assignment of error, Defendant argues that the trial court erred in denying his motion for post-verdict judgment of acquittal, specifically arguing that the evidence supported the lesser offense of manslaughter, not second degree murder. As an initial matter, we note that Defendant raised three claims in his motion for new trial and for post-judgment acquittal, none of which appear to include any argument that the evidence supported the lesser offense of manslaughter, as opposed to second degree murder.[5] Nonetheless, in the interest of justice, we have reviewed this argument and find that it is without merit.
1 ^Manslaughter is a homicide that would be a first or second degree murder, but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. La. R.S. 14:31(A)(1). Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender’s blood had actually cooled, or that the average person’s blood would have cooled, at the time the offense was committed. Id. “Sudden passion” and “heat of blood” are not elements of the offense of manslaughter; rather, they are mitigatory factors that may reduce the grade of the offense. State v. Bauman, 08-1169 (La.App. 5 Cir. 5/12/09), 15 So.3d 177, 185, unit denied, 09-1533 (La.4/23/10), 34 So.3d 300.
In order to be entitled to the lesser verdict of manslaughter, the defendant is required to prove the mitigatory factors by a preponderance of the evidence. Id. Provocation and time for cooling áre questions for the jury to determine under the standard of the average or ordinary person, one with ordinary self-control. Id. Accordingly, the question for this Court on review is whether a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that the mitigatory factors were not established by a preponderance of the evidence. Id.
On appeal, Defendant argues that his brother’s murder the day before and Harris’ subsequent refusal to inform him of the whereabouts of his brother’s murderer, Makale Thompson, deprived him of his self-control and cool reflection and provoked him to shoot Harris in “sudden passion” or “heat of blood.”
In this case, the jury requested to be re-apprised of the legal definitions of the responsive verdicts after retiring for deliberation. The trial court granted this re *53 quest and re-read the definitions, including manslaughter, to the jury. The jury did not find that Defendant established that he acted in “sudden passion” or “heat |lflof blood” after having been twice instructed on the responsive verdict of manslaughter, and found Defendant guilty of second degree murder. After our review, we find that a rational trier of fact could have found that Defendant failed to establish the mitigatory factors of manslaughter.
Here, the evidence shows that Defendant knew that Harris did not kill his brother, which he readily admits in his brief. Approximately 32 hours elapsed between the murders of Defendant’s brother and Harris. Defendant armed himself and proceeded to Harris’ residence, confronting him in an aggressive manner. Harris did not initiate the confrontation with Defendant or exhibit any provocative or aggressive behavior, but rather, the evidence shows that Harris appeared passive, lying in his bed, responding simply to Defendant’s questions, “I don’t know.” Under these facts, we find that a reasonable trier-of-fact could have found that Harris’ avowed ignorance of Makale Thompson’s whereabouts and Defendant’s brother’s murder were insufficient to deprive a reasonable person of his self-control and cool reflection. Accordingly, after viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found that Defendant did not establish by a preponderance of the evidence the mitigatory factors in support of manslaughter.

Assignment of Error Number One

In Defendant’s first assignment of error, he argues that the trial court erred in denying his July 15, 2011 motion to suppress the identification because the photographic lineup was unduly suggestive due to the fact that Defendant is depicted in a bright blue shirt while three other individuals in the lineup are depicted in orange prison garb.
Generally, a defendant has the burden of proof on a motion to suppress an out-of-court identification. State v. Bradley, 11-1060 (La.App. 5 Cir. 9/25/12), 99 So.3d 1099, 1105, writ denied, 12-2441 (La.5/3/13), 113 So.3d 208. In order to suppress the identification, the defendant must first prove that the identification procedure was suggestive. Id. An identification procedure is considered suggestive if the attention of the witness is unduly focused on the defendant during the procedure. Id. Strict identity of physical characteristics among the persons depicted in the photographic array is not required; however, there must be sufficient resemblance to reasonably test the identification. Id. This determination is made by examining articulable features of the persons’ pictures such as height, weight, build, hair color, facial hair, skin color and complexion, and the shape and size of the nose, eyes, and lips. Id. at 1105-06.
However, even when suggestiveness of the identification is shown by the defendant, the defendant must also show that there was a substantial likelihood of misidentification as a result of the identification procedure. State v. Higgins, 03-1980 (La.4/1/05), 898 So.2d 1219, 1233, cert. denied, 546 U.S. 883, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005). Therefore, the factors that courts must examine to determine, from the totality of the circumstances, whether the suggestiveness presents a substantial likelihood of mis-identification include: (1) the witness’ opportunity to view the criminal at the time of the crime, (2) the witness’ degree of attention, (3) the accuracy of the prior description of the criminal, (4) the level of certainty demonstrated at the confrontation, and (5) the time between the crime and the confrontation. Id. (citing Man *54 son v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977)).
A trial court’s determination of the admissibility of an identification should be accorded great weight and will not be disturbed on appeal unless the evidence reveals an abuse of discretion. Bradley, 99 So.3d at 1106. In evaluating a | ^defendant’s argument, the reviewing court may consider all pertinent evidence adduced at the suppression hearing, as well as at trial. Id.
In the instant case, the six-photograph array consists of two rows of three photographs. The six color photographs are the same size and shape, depicting the head and upper chest of the individuals against a neutral background. All of the subjects are African-American males of similar age and skin tone with short haircuts and no facial hair. Three of the men appear in orange prison garb, while the other three are in civilian clothes. Of the three men in civilian clothes, one is wearing a collared, orange plaid shirt, one is wearing a black shirt atop a white tee shirt, and Defendant is wearing a royal blue tee shirt. Defendant’s photograph is positioned in the middle of the bottom row, between an individual in prison garb and the individual in the black shirt.
On December 15, 2011, the trial court conducted a hearing on Defendant’s motion to suppress the identification, wherein the court denied the motion citing the following reasons:
Out of the six, we have three in orange jumpsuits, and three in regular clothes. Even though the defendant is shown in I guess that is a royal blue shirt, I don’t find it suggestive, because all of the facial features on all of the individuals in the lineups appear to correctly reflect one another, so I’m going to deny your motion to suppress the identification^]
After our review, we find no abuse of discretion in the trial court’s denial of Defendant’s motion to suppress the identification. Even assuming arguendo that the photographic lineup was suggestive, we find that Defendant has failed to show that there was a substantial likelihood that Ms. Harris misidentified Defendant as the perpetrator. For instance, under the first of the Brathwaite factors, i.e., the witness’ opportunity to view the criminal at the time of the crime, we find that Ms. Harris’ interaction with the perpetrator provided her with a generous opportunity to hsview him. Ms. Harris testified that when she responded to the perpetrator’s knock on her door, the lighting conditions allowed her to observe his “whole face,” and that she recognized him as Defendant. She briefly conversed with him before he proceeded into Harris’ bedroom, and she looked at him again when he pointed the gun at her before leaving her residence.
Second, regarding the witness’ degree of attention, Ms. Harris explained that when she opened the door, she recognized the visitor, whom she had seen “many times” before, as Derrick Francois. Moreover, she was attentive enough to offer her condolences for the death of Defendant’s brother, for which he thanked her. Third, with respect to the accuracy of the prior description of the criminal, Ms. Harris described the perpetrator as wearing a black shirt and smoky gray jeans. She further specified that he has brown skin, short hair, and was about 5'9" tall. Though these descriptions of Defendant’s skin and hair are general, they are consistent with Defendant’s image in the photographic lineup.
Fourth, with respect to the level of certainty demonstrated at the confrontation, Detective Compton, who presented Ms. Harris with the lineup, testified that she did not hesitate and that she was “immedi *55 ate and confident” in her identification of Defendant. Ms. Harris circled Defendant’s picture and identified him as the person who shot her son. Moreover, Ms. Harris identified another brother of Delast Francois in the first lineup, but specified that he was not the one who shot her son. Finally, with respect to the time between the crime and the confrontation, the record indicates that Ms. Harris identified Defendant from the photographic lineup within approximately three hours of her son’s murder.
Defendant contends that Ms. Harris’ identification is not reliable because the police did not ask her whether she was wearing her glasses at the time of the incident and because she was prescribed medications that can cause side effects of 113“brain fog,” blurred vision or a “zombie-like state.” We find that Defendant has failed to produce any evidence suggesting that Ms. Harris was not in fact wearing her glasses at the time of the incident, or that her alleged failure to do so resulted in a substantial likelihood of misidentification of Defendant. Similarly, Defendant has failed to show that Ms. Harris was in any way impaired or suffering from side effects as a result of any medications. Both Ms. Harris and her treating psychiatrist, Dr. Induiu, testified that Ms. Harris had not experienced any side effects from her medication either before or after her son’s murder.
In view of the foregoing, we find that Defendant has failed to show that there was a substantial likelihood that Ms. Harris misidentified him as the perpetrator of Harris’ murder. Accordingly, we find that there was no abuse of discretion in the trial court’s denial of Defendant’s motion to suppress the identification. This assignment of error is without merit.

Assignments of Error Numbers Two and Three

In Defendant’s second assignment of error, he argues that the trial court erred in denying his January 7, 2018 motion in limine, which sought to exclude as inadmissible hearsay the testimony of Ms. Geary regarding her telephone conversation with Ms. Harris on the night of Harris’ murder. Defendant contends that this testimony should have been excluded because it does not fall under the present sense impression exception in La. C.E. art. 803(1), nor does it qualify as non-hearsay under La. C.E. art. 801(D)(1)(c). He further contends, in his third assignment of error, that the trial court erred in denying his motion for new trial, which also asserted that the trial court improperly admitted the hearsay testimony of Ms. Geary on the same basis. The State contends that this testimony is admissible as a present sense impression under La. C.E. art. 803(1), as well as nomjhearsay2o under La. C.E. art. 801(D)(1)(c), and that the trial court did not err in denying both Defendant’s motion in limine and his motion for new trial.
We will first address the trial court’s denial of Defendant’s motion in limine, as alleged in his second assignment of error. A trial court’s ruling on the admissibility of evidence is reviewed for an abuse of discretion. State v. Williams, 11-876 (La.App. 5 Cir. 3/27/12), 91 So.3d 437, 440, writ denied, 12-1013 (La.9/21/12), 98 So.3d 334. On January 8, 2013, a hearing was conducted on Defendant’s motion in limine, which the trial court denied on March 18, 2013, concluding that the testimony was admissible under the present sense impression exception to the hearsay rule, as set forth in State v. Heggar, 39,915 (La.App. 2 Cir. 8/17/05), 908 So.2d 1245.
Hearsay is “a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in *56 evidence to prove the truth of the matter asserted.” La. C.E. art. 801(C). Hearsay evidence is inadmissible except as specified in the Louisiana Code of Evidence or other legislation. La. C.E. art. 802.
Pursuant to La. C.E. art. 803(1), a statement describing or explaining an event or condition made while the declar-ant was perceiving the event or condition, or immediately thereafter, is not excluded as hearsay, even though the declarant is available as a witness. In determining whether a statement qualifies as a present sense impression exception to the hearsay rule, the critical factor is whether the statement was made while the declarant was perceiving the event' or immediately thereafter. State v. Jones, 98-1055 (La.App. 5 Cir. 2/23/99), 729 So.2d 95, 98.
In Heggar, supra, the Second Circuit determined that testimony regarding a witness’ telephone conversation with the victim immediately prior to his murder was admissible pursuant to the present sense impression exception to the hearsay |21rule. Id. at 1248-49. The victim in Heggar was on the phone with his girlfriend when the defendant drove into the victim’s driveway and began conversing with him. The victim told his girlfriend that he and the defendant were talking, and she asked the victim to call her back after the defendant left. Shortly after the victim got off of the phone with his girlfriend, the defendant shot the victim eight times, killing him.
In a pre-trial motion in limine, the defendant argued that the girlfriend could not testify as to the victim’s statements to her shortly before his death because this amounted to inadmissible hearsay. The trial court denied the defendant’s motion, finding the girlfriend’s testimony regarding her conversation with the victim was admissible as a present sense impression. Id. at 1248. On appeal, the Second Circuit explained that the girlfriend’s testimony constituted hearsay under La. C.E. art. 801 because the statement presented through her testimony is that of the victim (an out-of-court declarant) and because the statement was offered to prove that the person who pulled into the victim’s driveway was the defendant. Id. at 1249. However, the court held that the girlfriend’s testimony qualified as a present sense exception to the hearsay rule under the under La. C.E. art. 803(1) because the victim’s statements to his girlfriend described the arrival of the defendant and his conversation with the defendant as the events happened. Id.
In the instant case, the evidence established that Ms. Harris told Ms. Geary that Delast Francois’ brother was at her door just as Defendant was standing at Ms. Harris’ door. Ms. Harris’s statement was made immediately after she permitted Defendant to enter her home, and as such, we find that the statement falls within the present sense impression exception to the general rule of hearsay under La. C.E. art. 803(1). Because our review of the record shows that the trial court admitted Ms. Geary’s testimony on the basis of La. C.E. art. 803(1), and not on thej^basis of La. C.E. art. 801(D)(1)(c), Defendant’s argument that Ms. Geary’s testimony is not admissible under La. C.E. art. 801(D)(1)(c) is moot.
Moreover, even assuming that Ms. Geary’s testimony regarding Ms. Harris’ statement constituted inadmissible hearsay, the admission of the statement can be deemed harmless. We have held that although a statement may constitute inadmissible hearsay, if the statement is merely cumulative or corroborative, the admission of such statement is harmless error. Jones, 729 So.2d at 99. Here, Ms. Harris testified at trial and was cross-examined regarding her phone conversa *57 tion -with Ms. Geary. Accordingly, Ms. Geary’s testimony is merely cumulative of Ms. Harris’ own testimony and its admission, if improper, can be deemed harmless. Therefore, we find that the trial court did not abuse its discretion in denying Defendant’s motion in limine.
With respect to Defendant’s third assignment of error, we find no abuse of discretion in the trial court’s denial of Defendant’s motion for new trial, in which he again asserted that the trial court improperly admitted the hearsay testimony of Ms. Geary.
Pursuant to La.C.Cr.P. art. 851, a motion for new trial is based upon the supposition that an injustice has been done to the defendant, and unless such injustice is shown, the new trial motion shall be denied no matter upon what allegations the motion is grounded. State v. Bazley, 09-358 (La.App. 5 Cir. 1/11/11), 60 So.3d 7, 19, writ denied, 11-0282 (La.6/17/11), 63 So.3d 1039. On appeal, a trial judge’s ruling on a motion for new trial will not be disturbed absent a clear showing of an abuse of discretion. State v. Richoux, 11-1112 (La.App. 5 Cir. 9/11/12), 101 So.3d 483, 490, writ denied, 12-2215 (La.4/1/13), 110 So.3d 139.
IgjAs set forth in our analysis of assignment of error number two, we have determined that the trial court did not abuse its discretion in denying Defendant’s motion in limine. Accordingly, we similarly find that the trial court did not abuse its discretion in denying Defendant’s motion for new trial on the same basis. This assignment of error lacks merit.

Assignments of Error Numbers Six and Eight

In Defendant’s sixth assignment of error, he argues that his sentence of life imprisonment at hard labor without benefits is excessive since the evidence only established the lesser offense of manslaughter, and not second degree murder. In essence, Defendant contends that his life sentence is excessive because he should have been convicted of manslaughter, the maximum penalty for which is 40 years at hard labor. See La. R.S. 14:31. For the same reason, Defendant contends in his eighth assignment of error that the trial court erred in denying his motion to reconsider sentence.
As shown in our analysis of Defendant’s assignments of error numbers four and five, we have found that a rational trier of fact could have found that Defendant failed to establish the mitigatory factors of manslaughter. We further found that the evidence was sufficient for the jury to have found that Defendant was guilty of second degree murder beyond reasonable doubt. Accordingly, we find no merit to Defendant’s claim that his life sentence is excessive because he should have been convicted of manslaughter and sentenced in accordance with the penalties for that offense. However, in the interest of justice, we will review whether Defendant’s sentence of life imprisonment at hard labor without benefits for his conviction of second degree murder is excessive.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A | ^sentence is considered excessive if it' is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Smith, 01-2574 (La.1/14/03), 839 So.2d 1, 4. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Lawson, 04-334 (La.App. 5 Cir. 9/28/04), 885 So.2d 618, 622. A trial judge has broad discretion when imposing a sentence and a reviewing *58 court may not set a sentence aside absent a manifest abuse of discretion. State v. Dorsey, 07-67 (La.App. 5 Cir. 5/29/07), 960 So.2d 1127, 1130. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. Id.
Defendant was convicted of second degree murder, the penalty for which is mandatory life imprisonment at hard labor without benefits. La. R.S. 14:30.1(B). Although Defendant’s sentence is statutorily mandated, it may still be reviewed for constitutional excessiveness. State v. Cammatte, 12-55 (La.App. 5 Cir. 9/11/12), 101 So.3d 978, 985, writ denied, 12-1370 (La.10/26/12), 99 So.3d 644 and writ denied, 12-2247 (La.4/5/13), 110 So.3d 1075. To rebut the presumption of constitutionality, the defendant must show that he is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense and the circumstances. Id.
We find that Defendant has failed to offer any argument or evidence establishing that he is exceptional. Rather, his argument is limited to the contention that his sentence is excessive solely because he should have been convicted of manslaughter, and not second degree murder. Accordingly, we find that the trial court did not abuse its discretion in sentencing Defendant to thej^mandatory minimum sentence of life imprisonment at hard labor without benefits for his conviction of second degree murder. This assignment of error lacks merit.
Similarly, we find that Defendant’s eighth assignment of error, in which he contends that the trial court erred in denying his motion to reconsider sentence, to be without merit. Defendant again argues that the trial court’s error in denying his motion to reconsider sentence lies in the contention that his life sentence was excessive because the evidence only established the offense of manslaughter. Because we have found that the trial court did not abuse its discretion in sentencing Defendant to the mandatory minimum sentence of life imprisonment at hard labor without benefits for his conviction of second degree murder, we find that this assignment of error is without merit.

Assignment of Error Number Seven

In Defendant’s seventh assignment of error, he argues that he was denied effective assistance of counsel when trial counsel failed to argue at his sentencing hearing that the evidence only supported the lesser offense of manslaughter.
A claim for ineffective assistance of counsel is most appropriately addressed through an application for post-conviction relief, filed in the trial court where a full evidentiary hearing can be conducted, rather than a direct appeal. State v. Chappell, 11-148 (La.App. 5 Cir. 12/28/11), 83 So.3d 216, 223. However, when the record contains sufficient evidence to rule on the merits of the claim and the issue is properly raised by assignment of error on appeal, it may be addressed in the interest of judicial economy. Id.
Because we find that the record contains sufficient evidence to rule on the merits of this claim, we will address it on appeal. A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution of 1974. Chappell, 83 So.3d at 223. In order to show ineffective assistance of counsel, a defendant must demonstrate that (1) his attorney’s performance was deficient, and (2) he was prejudiced by the deficiency. Id. (citing Strickland v. Wash *59 ington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).
A claim challenging the sufficiency of the evidence is properly raised in the trial court by a motion for post-verdict judgment of acquittal. State v. Thomas, 08-818 (La.App. 5 Cir. 4/28/09), 13 So.3d 603, 606 n. 3, writ denied, 09-1294 (La.4/5/10), 31 So.3d 361. Such a motion “must be made and disposed of before sentence.” La.C.Cr.P. art. 821(A). Accordingly, we find that Defendant’s trial counsel was not ineffective for failing to raise a claim at sentencing which is to be disposed of before sentencing.
Furthermore, we have reviewed the merits of Defendant’s contention that the evidence only supports the lesser offense of manslaughter, and have found that it has no merit. When the substantive issue that an attorney has not raised is without merit, then the claim that the attorney was ineffective for failing to raise the issue also has no merit. State v. Williams, 91-2260 (La.App. 1 Cir. 12/23/92), 613 So.2d 252, 256-57. Therefore, we find that Defendant has failed to establish that his trial counsel was ineffective for failing to raise this meritless claim.

Assignment of Error Number Nine

In Defendant’s ninth assignment of error, he argues that the trial court erred in qualifying Dr. Nirnala Induiu as an expert in clinical psychiatry. Defendant contends that Dr. Induiu should not have been qualified as an expert because she had never been qualified before, had never authored any books or peer-reviewed articles, and had no teaching experience.
In Louisiana, the admission of expert testimony is governed by La. C.E. art. 702, which provides:
1 P7If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
In State v. Foret, 628 So.2d 1116 (La.1993), the Louisiana Supreme Court adopted the test set forth in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), regarding proper standards for the admissibility of expert testimony which requires the trial court to act in a gatekeep-ing function to ensure that any and all scientific testimony or evidence admitted is not only relevant, but rehable. State v. Boudoin, 11-967 (La.App. 5 Cir. 12/27/12), 106 So.3d 1213, 1225, writ denied, 13-0255 (La.8/30/13), 120 So.3d 260. The Daubert inquiry consists of four considerations: (1) whether the theory or technique can be and has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) whether the methodology is generally accepted by the relevant scientific community. Id. at 1225.
In 2003, ten years after adopting Daubert, the Louisiana Supreme Court recognized a limitation of the Daubert inquiry. Cheairs v. State ex rel. Dep’t of Transp. & Dev., 03-0680 (La.12/3/03), 861 So.2d 536, 541-42. In Cheairs, the defendant challenged the qualification of the plaintiffs witness as an expert on the ground that his education did not qualify him to give opinion testimony on a particular matter. Id. at 541.
The Cheairs Court observed that Daubert only addresses the reliability of the methodology used by the expert, not the adequacy of the expert’s qualifica *60 tions. Id. at 542. Therefore, the court adopted a broader three-prong inquiry developed by the U.S. Eleventh Circuit “to more fully assist [trial] courts in | ^determining all the relevant issues related to the admissibility of expert testimony[.]” Id. This three-prong inquiry was first set forth in City of Tuscaloosa v. Hateros Chemicals, Inc., 158 F.3d 548 (11th Cir.1998), in which the Court stated that the admission of expert testimony is proper only if all three of the following are true:
(1) [T]he expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.
Cheairs, 861 So.2d at 542 (citing Harcros Chemicals, 158 F.3d at 562). In reviewing the decision of a trial court in qualifying a witness as an expert, courts typically place the burden on the party offering the witness as an expert and consider that the decision to accept or reject the offer rests within the sound discretion of the trial court. State v. Craig, 95-2499 (La.5/20/97), 699 So.2d 865, 870, cert. denied, 522 U.S. 935, 118 S.Ct. 343, 139 L.Ed.2d 266 (1997). Therefore, a trial court’s decision to qualify an expert witness will not be overturned absent an abuse of discretion. Johnson v. E.I. DuPont deNemours & Co., Inc., 08-628 (La. App. 5 Cir. 1/13/09), 7 So.3d 734, 743.
In the instant case, the State offered Dr. Induiu as an expert in clinical psychiatry at trial. The Court qualified Dr. Induiu as such over the Defendant’s objection. Our review of the record shows that after obtaining her college and medical degrees in India, Dr. Induiu completed internships at hospitals in India and at Wayne State University before serving a three-year psychiatric residency at the Medical College of Ohio in Toledo. Dr. Induiu explained that she is a board-certified, Louisiana-licensed psychiatrist, who has been practicing since 1994, working at mental health clinics in Terrebonne, Orleans, and Jefferson Parishes. 12;)Dr. Induiu treated Ms. Harris from 2007 until February of 2012, meeting approximately four times a year. Dr. In-duiu acknowledged that she has not previously been qualified as an expert in clinical psychiatry, she has not written any articles or books in the field, nor has she taught any classes in the field.
In view of Dr. Induiu’s education and experience in the field of psychiatry, as well as her treatment of Ms. Harris over a span of several years, we find that the State has shown that she was qualified to testify competently regarding her medical treatment of Ms. Harris. Therefore, we find no abuse of discretion in the trial court’s decision to qualify Dr. Induiu as an expert in the field of clinical psychiatry. Eiror Patent Discussion
The record was reviewed for errors patent, according to LSa. C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Our review reveals an error in the “State of Louisiana Uniform Commitment Order.” The Uniform Commitment Order reflects the incorrect date, May 9, 2011, as the date of the offense. Accordingly, to ensure an accurate record, we remand this case and order the Uniform Commitment Order to be corrected to reflect the correct date of the offense, April 28, 2011. We further direct the Clerk of Court for the 24th Judicial District Court to transmit the original of the corrected *61 Uniform Commitment Order to the officer in charge of the institution to which Defendant has been sentenced and to the Department of Corrections’ Legal Department. See State v. Long, 12-184 (La.App. 5 Cir. 12/11/12), 106 So.3d 1136, 1142, citing La.C.Cr.P. art. 892(B)(2).
CONCLUSION
Accordingly, for the foregoing reasons, we affirm Defendant’s convictions and sentences for one count of second degree murder, in violation of La. R.S. |an14:30.1, and one count of intimidation of a witness, in violation of La. R.S. 14:129.1. The matter is remanded to the trial court for correction of an error patent as noted herein and the Clerk of Court for the 24th Judicial District Court is ordered to transmit the original of the corrected Uniform Commitment Order to the officer in charge of the institution to which Defendant has been sentenced and to the Department of Corrections’ Legal Department.

CONVICTION AND SENTENCE AFFIRMED; COMMITMENT REMANDED FOR CORRECTION OF COMMITMENT.

. On May 2, 2011, Malcale Thompson turned himself in and was charged with the second degree murder of Delast Francois.

. "Smurf” was Chandrick Harris’ nickname.

. Defendant was represented by two attorneys, who each separately filed motions for new trial on April 5, 2013. Both motions were denied by the trial court on that same day.

. As with the motions for new trial, see n. 3, supra, both of Defendant’s attorneys each separately filed motions to reconsider sentence on April 5, 2013, which were both denied by the trial court on that same day.

. Defendant raised the following claims in him motion for new trial and for post-verdict judgment of acquittal: (1) the trial court erred in admitting the testimony of Carolyn Geary; (2) the trial court erred in qualifying Dr. Nirnala Induiu as an expert; and (3) the verdict was contrary to the law and evidence.